182 So.2d 644 (1966)
Millard B. CONKLIN, Appellant,
v.
Vera PRUITT and Herman E. Pruitt, doing business as Shore Manor Sanitarium, Appellees.
No. G-160.
District Court of Appeal of Florida. First District.
February 1, 1966.
Rehearing Denied February 28, 1966.
Ossinsky & Krol, Daytona Beach, for appellant.
Raymond, Wilson, Karl & Conway, Daytona Beach, for appellees.
STURGIS, Judge.
The appellant, Millard B. Conklin, defendant below, brings this appeal to review the final decree in a suit brought by Vera Pruitt and Herman E. Pruitt, d/b/a Shore Manor Sanitarium, for an accounting of monies allegedly handled by defendant for their account incident to their operation of a nursing home known as "Casements *645 Manor" in Ormond Beach, Florida, and incident to their subsequent operation of a nursing home known as "Shore Manor Sanitarium" in Daytona Beach, Florida. The decree granted the accounting sought by plaintiffs and denied a counterclaim of the defendant whereby he affirmatively alleged that said nursing home operations were conducted as a partnership between the plaintiffs, husband and wife, as joint owners of a one-half interest, and the defendant as owner of the remaining one-half.
Appellant states the sole point of law involved as follows:
"Where the parties have recognized by their conduct and written documents, the existence of a partnership,  undisclosed intentions to the contrary of one party are no basis for declaring that a partnership relation does not exist because of a lack of meeting of the minds, such party being estopped to deny the relationship."
As thus stated the point is obviously well taken. Its fallacy lies, however, in the premise that the evidence conclusively demonstrates that a partnership relationship did in fact exist between the parties, whereas the chancellor reached the opposite conclusion. The issue for decision here, as in the court below, rests entirely upon questions of fact, much of which is in dispute, and may be stated thus: Is there substantial competent evidence in the record supporting the chancellor's finding that no partnership existed between the plaintiffs and the defendant? It was the burden of the appellant-counterclaimant to establish the material allegations of his counterclaim by a preponderance of the evidence.
Appellant makes the point, with which we agree, that where as in this case the chancellor's findings of fact are based on a written record, consisting of the pleadings and the report of a special examiner who by stipulation was appointed to take and report the testimony, the presumption of correctness attending the findings of the chancellor on questions of fact is slight for the reason that under such circumstances the appellate court has before it everything that the chancellor had before him and therefore has the same opportunity to weigh its evidentiary value. West Shore Restaurant Corp. v. Turk, 101 So.2d 123 (Fla. 1958). Despite that rule, said presumption does attend the appeal and has vital force in the consideration of conflicting issues of fact. Questions of fact are traditionally decided at the trial level. We adhere to the notion that such disposition should remain there, secure from "pick and choose" intermeddling of the appellate courts.
The primary thrust of appellant's contention that the evidence unequivocally established the alleged partnership relation is directed to the fact that on August 2, 1956, a document entitled "Partnership Certificate," signed by "Vera Pruitt" and "Millard B. Conklin" was addressed and delivered to First Atlantic National Bank of Daytona Beach, Daytona Beach, Florida, incident to the opening therein of an account under the name of "Shore Manor." Said document recites that said name "is a fictitious name duly registered in compliance with the laws of the State of Florida and used in the conduct of an unincorporated business owned entirely by the undersigned as co-partners", and that the members of said partnership are Millard B. Conklin and Vera Pruitt "and no others." It purports to constitute and appoint Millard B. Conklin as the party entitled to check upon funds standing in said account and to endorse all checks and other demand negotiable instruments made payable to Shore Manor or presented to the bank in the name of Shore Manor for deposit or for cash. The document falls far short of having the effect attributed to it by appellant. Casual inspection shows it has none of the characteristics of a partnership agreement and that its sole purpose was to define conditions of deposit in and withdrawals from the "Shore Manor" account as between the bank and the depositor. Moreover, it falsely stated that the fictitious *646 name "Shore Manor" had been registered according to law, whereas this was not done until after plaintiffs had employed their present attorneys. It is also noted that said document recites a partnership composed of Millard B. Conklin and Vera Pruitt "and no others," which directly contradicts the defendant's pleadings and testimony, and certain other documentary exhibits introduced by him to the effect that it was composed of himself and Vera Pruitt, and Herman E. Pruitt.
It would unduly and unnecessarily extend this opinion to relate in detail the voluminous evidence presented in this cause. Suffice it to say that a careful reading and analysis thereof reveals substantial competent evidence to support the chancellor's findings of fact and conclusions of law based thereon. Briefly discussing the proofs, it appears:

I.
The testimony of the parties is in direct conflict as to what, if any, agreement was made between them prior to the time plaintiffs took over the operation of Casements Manor. They deny ever making or discussing a partnership arrangement with defendant and state, on the contrary, that they agreed to pay $800.00 per month rent to the owner of the "Casements Manor" property, Casements, Inc., for whom appellant was attorney, and to have him in their behalf keep their books, handle the funds derived from their operation of Casements Manor nursing home, pay their bills through his office, and serve as their attorney and management counsel, for which they expected to pay his reasonable charges.
The defendant on the other hand testified that he and Mrs. Pruitt orally agreed to operate Casements Manor as partners; that he as owner of the Casements Manor building agreed to furnish same as his contribution to the partnership; that it was agreed the funds derived from the operation of Casements Manor would be handled by him and used to pay off the obligations and operating expenses of its owner, Casements, Inc., including a mortgage indebtedness on the property; and that any profits left after all of said disbursements were to be divided equally between him and Vera Pruitt.

II.
It is undisputed that there was no writing expressing any partnership agreement between the defendant, a lawyer of over thirty years experience, and either of the plaintiff laymen who on a previous occasion had admittedly employed defendant to perform legal services in a non-related matter.

III.
The plaintiffs leased the Shore Manor Sanitarium property from the owners, Col. and Mrs. Wall. The plaintiffs, the defendant, the lessors' attorney, Frank Pyle, Esq., and Robert F. Clayton, a real estate dealer, were present at the signing. Mrs. Pruitt testified that when they met in Mr. Pyle's office to execute the lease he suggested that she have her attorney present, whereupon she called the defendant who came to the office, looked over the lease, found some objections, and advised her not to sign it, but at no time said anything about being a partner with the Pruitts. Col. Wall, called as a witness for plaintiffs, confirmed Mrs. Pruitt's statement and testified that defendant told him he was representing the Pruitts as their attorney, and that in a conversation concerning his objections to the lease defendant said, "I am only trying to protect my clients. I have no further interest in it other than to protect my clients." Attorney Pyle, also called as a witness for plaintiffs, testified that defendant said nothing to indicate he had any interest as a partner or otherwise, that he appeared to be acting strictly as attorney for plaintiffs, that had there been any other indication he would have required defendant to be joined as a party to the lease, that plaintiffs came to see him about leasing the property before the defendant entered into the picture, and that at the time of a conference with the defendant and the plaintiffs on the premises *647 when the sheriff was endeavoring to serve a writ of possession the defendant stated, "I don't have any interest other than just to protect my clients."
Mr. Roy Kinsey, a law partner of Mr. Pyle, who represented Col. and Mrs. Wall in landlord-tenant proceedings involving the Shore Manor property, testified that a Mr. Vincent, another member of said law firm, asked the defendant if he had any interest in the nursing home of the plaintiffs and that "he categorically denied having any interest in the business. It just sticks in my mind that he said something to the effect that he was merely their attorney." Kinsey also testified that when the writ of possession was served by the sheriff, Mr. Vincent asked the defendant why he didn't pay the delinquent rent and that defendant responded: "It is not up to me," and "they can do what they please."

IV-A.

Plaintiffs' Documentary Evidence
Plaintiffs submitted the following documentary evidence in support of their contention that the nursing home operation was not a partnership as alleged by defendant:
(a) Licenses for the conduct of such business issued by the State Board of Health to plaintiffs for 1954, 1955, 1956 and 1958.
(b) Applications for license to operate a nursing home for 1955, 1956 and 1958, prepared by the defendant and indicating that plaintiffs alone had any interest in the operation.
(c) Telephone bills showing that "Casements Manor" had its telephone listed with the same number and listing as previously stood in the name of plaintiff H.E. Pruitt.
(d) Cards, letterheads and advertising, including classified telephone directories, showing only the names of the Pruitts as being the persons interested in the operation.
(e) Minutes of a meeting of the City Commission of Daytona Beach, Florida, showing that defendant appeared as attorney for the plaintiffs.
(f) Memorandum agreement and lease agreement with the Walls, showing the Pruitts as sole lessees of the Shore Manor property.
(g) An insurance binder showing the Pruitts to have the sole interest as lessees.
(h) An insurance policy cancellation to the same effect.
(i) An electric power agreement showing the sole interest in plaintiffs.
(j) A city occupational license for 1956-1957 showing no change in interest from the Pruitts.
(k) Water and electric deposits of Shore Manor in the name of the Pruitts only.
(l) Landlord-tenant proceedings in the County Judge's Court of Volusia County involving Shore Manor and showing the Pruitts to be the sole lessees and the defendant to be their attorney.
(m) Journal and ledger of Casements Manor and of Shore Manor showing amounts (among other expenses) paid to Casements, Inc., for rental of Casements Manor.
(n) Letter of defendant to attorney for State Beverage Department stating he was attorney for the plaintiffs.
(o) Letter of defendant to Florida Power and Light Company showing none other than plaintiffs to be interested in the business.
(p) Letter from defendant to the Schultheis Insurance Agency stating that plaintiffs had moved their operation from Ormond Beach and showing insurance policies to be in the name of the plaintiffs as the only persons interested.
(q) Several other documents having the same implications.

*648 IV-B.

Defendant's Documentary Evidence
Defendant produced in evidence certain documents which were in his custody and which, standing alone, have some evidentiary value as tending to support his claim as to the existence of a partnership. Included are:
1. Numerous checks, deposit slips, bank statements, invoices and bills pertaining to the business operations of "Casements Manor" and "Shore Manor," and some items, indeed, relating to personal bank accounts of the plaintiffs. Defendant's custody of these documents is as consistent with plaintiffs' version of the nature of their relationship with the defendant as with defendant's version of the same.
2. The heretofore discussed "Partnership Certificate," being the paper delivered to the First Atlantic National Bank of Daytona Beach.
3. An application to the State Board of Health for license to operate the nursing home, dated March 1, 1957, signed by the defendant and Mrs. Pruitt, on which a blank space was provided for a check mark to indicate the fact if the business was operated by a "partnership." This space was checked affirmatively. It is noted that this is the only one of such applications so checked or on which defendant's name appears; and Mrs. Pruitt testified that she did not see such check mark or the defendant's name thereon when she signed it.

V.
Plaintiffs testified to the effect that their relationship with defendant was brought into controversy when Mrs. Pruitt discovered that defendant was disbursing to himself from plaintiffs' business account, handled by defendant as their attorney and business adviser, amounts equal to the disbursements he made to plaintiffs in regular course for their personal account, and that such was contrary to their arrangement with defendant to the effect that they alone should receive the net proceeds of the business. Prior to the time it was discovered defendant was disbursing to himself an amount equal to the disbursements made to the Pruitts, all federal and state employment tax returns were made by or under the direction of the defendant and signed by him. None were signed by either of the plaintiffs who testified they had never seen or approved same.
It is also undisputed that in his annual personal income tax returns defendant did not identify as partnership proceeds any amounts received from the Casements Manor or Shore Manor operations; that he reported only such amounts as were paid to him in cash. Appellees cogently argue that said method of reporting his personal income is consistent with their contention that he was entitled to be paid only for his services as their attorney and business advisor, and by the same token, is inconsistent with his claim of a partnership relation. The trial judge doubtless assumed, as we do, that the defendant, an experienced attorney at law, was aware that net earnings of a partnership, whether distributed or not, are required to be reported in the individual federal income tax return of each member of a partnership.

VI.
The testimony is inconclusive as to the ownership status of the property occupied by Casements Manor, the former home of John D. Rockefeller, Sr., during the period it was occupied and operated by plaintiffs as a nursing home. Defendant contended he acquired it from Casements, Inc., a nonprofit corporation composed of elderly persons whom he had represented as attorney at law, and that he provided the use of the home as his contribution to the alleged "Casements Manor" and "Shore Manor" partnership operations. Defendant's claim of ownership of said property is not clearly established by the record. We note that in the course of his testimony he stated that no rent was payable from the Casements Manor operation. However, an audit made *649 by defendant's accountant and introduced by him in evidence shows that rent in the amount of $17,622.93 had been paid by the plaintiffs at Casements Manor.
Finding no error, the decree appealed is
Affirmed.
WIGGINTON, Acting C.J., and CARROLL, DONALD K., J., concur.