384 So.2d 713 (1980)
IN the INTEREST OF J.F., a Child.
No. 79-1223.
District Court of Appeal of Florida, Third District.
June 3, 1980.
Rehearing Denied July 2, 1980.
*714 Melvin S. Black, Miami, for appellant.
Myles J. Tralins and Richard J. Potash, Miami, for appellee.
Before HUBBART, SCHWARTZ and NESBITT, JJ.
NESBITT, Judge.
This is an appeal of a natural mother from an order permanently committing her daughter to the Florida Department of Health and Rehabilitative Services for subsequent adoption, which order terminates parental rights.
The central point for review is whether the circuit court followed and employed the correct statute(s) governing a commitment proceeding. The mother contends that the court should have applied Section 39.41(1)(d) Florida Statutes (Supp. 1978) and the definition of "abandoned" contained in Section 39.01(1), Florida Statutes (Supp. 1978) which became effective October 1, 1978. The appellant argues that by utilizing the former provisions of Section 39.11(1)(d), Florida Statutes (1977), the circuit court did not apply the applicable law. Like the circuit court below, we find that the record supports the commitment under either application of the cited statutes and affirm.
The child was voluntarily relinquished to the Department by the natural mother on November 2, 1976 for temporary assistance and foster care. On January 5, 1977, the Department petitioned the court for temporary custody which was granted by order entered January 14, 1977 based upon a waiver, consent, and joinder executed by the natural mother. On August 2, 1978, the Department petitioned for permanent commitment,[1] which petition tracked the then-applicable provisions of Section 39.11(1)(d), Florida Statutes (1977). The hearing on permanent commitment was continued, by stipulation of the attorney for the mother, the guardian ad litem for the child, and the Department, for a period of three months so as to afford the mother an opportunity for: (a) psychiatric evaluation; (b) therapy; (c) vocational rehabilitation; and (d) completion of a program of parent effectiveness training. The petition for permanent commitment pended before the court by stipulation; motions for continuance and the evidentiary hearing thereon were not concluded until May 23, 1979. The final order of commitment entered on June 5, 1979 made hybrid findings sufficient to support a permanent commitment under either the procedure applicable and governing before October 1, 1978 or that which went into effect after that date.
A comparison of the criteria delineated in Section 39.11(1)(d), Florida Statutes (1977) and that set forth in Section 39.41(1)(d) and Section 39.01(1), Florida Statutes (Supp. 1978) indicates that the former section sets forth a more stringent burden to be met prior to the permanent commitment of the child to an appropriate agency. Under the contemporary criteria, abandonment occurs when a parent fails to provide support or communicate with a child for a period of six months. Marginal efforts by a parent to support and communicate with the child during the six months period do not evince *715 a settled purpose to assume parental duties and allow a trial court to declare the child to have been abandoned. Under the former provisions of Section 39.11(1)(d), the period of abandonment was one year and required a substantial showing of financial parental neglect and parental unfitness detrimental to the child's welfare. In re Smith, 299 So.2d 127 (Fla.3d DCA 1974). Additionally, a showing was required that permanent commitment was in the best interest of the child. In re R.J.C., 300 So.2d 54 (Fla. 1st DCA 1974).
In this case, by the mother's testimony, she visited the child only three times during the entire period the child was in temporary custody of the Department. The first visit occurred in December of 1976; the second in April of 1977; and the final visit in October of 1978. The mother admitted she was never told she could not see the child. She further admitted she did not request visits on the child's birthday or holidays. Other parts of her testimony which are somewhat conflicting are urged here as a basis for showing that a bureaucratic veil was drawn between the mother and her child. If we were of the view that such an argument was supported by the record, we would unhesitatingly reverse because of our discountenance of such conduct. However, the trial judge evidently believed the testimony of the social worker and found the mother had chosen to visit the child on only two occasions.
Following the order granting the petition for temporary custody issued January 14, 1977, appellant visited her child sometime in April of 1977. Nearly eighteen months had elapsed between the time of that visit and the next one in October of 1978. The October visit followed the petition for permanent commitment. Even under the former provisions of Section 39.11(1)(d), Florida Statutes (1977), appellant did not maintain necessary contacts with her child.
Parts of the stipulation made to afford the mother an opportunity to rehabilitate herself were complied with, although belatedly, while others were largely uncompleted. A psychologist testified that the mother had emotional difficulties, was dependent and immature, and was functioning at a lower level than average intelligence terming her a borderline individual.
The trial court found the child to have been abandoned in that the mother had never contributed to the child's support or demonstrated any degree of parental fitness, stability or emotional maturity so as to develop any type of relationship with her child. The findings of the trial court that abandonment occurred under Section 39.41(1)(d) and 39.01(1) or 39.11(1)(d) are supported by clear and convincing evidence. In re Estate of C.K.G., 365 So.2d 424 (Fla.2d DCA 1978).
This court in Kokay v. South Carolina Ins. Co., 380 So.2d 489, 491 (Fla.3d DCA 1980) pointed out that:
The well established principle of law is that where the words used and the grammatical construction employed in a statute are clear and they convey a definite meaning, the legislature is presumed to have meant what it said and, therefore, it is unnecessary to resort to the rules of statutory construction. [citations omitted]
In spite of this, appellant suggests, because the mother placed the child with the Department for temporary assistance and foster care, it negates a finding that the parent had made no provision for the child's support. We reject this argument because a finding consistent with it would preclude the Department from ever filing a petition for permanent commitment of a child which had been left with it. Clearly, this is not the legislative intent under any of the cited statutes.
It is further argued that the stipulation between the Department, the guardian ad litem, and counsel for the mother interrupted the running of the requisite time period in order to constitute abandonment. Again, we reject such a contention as unsound in that there is no provision within the statute for tolling the running of the six-month time period and the adoption of such a proposition would have a chilling *716 effect on the Department and dissuade it from ever extending grace to parents to afford them an opportunity to become rehabilitated. The delicate interrelationship between a parent and a child should be fostered and encouraged by the Department.
Finally, appellant urges, citing Solomon v. McLucas, 382 So.2d 339 (Fla.2d DCA 1980), specifically footnote three, that termination of a parent's right to enjoy a child is so profound a judicial act as to required the same standards and criteria as would be required to terminate the rights of the parent in an adoption proceeding pursuant to Chapter 63, Florida Statutes (1977).
The commitment of a child under Section 39.41(1), Florida Statutes (Supp. 1978) or Section 39.11(1)(d), Florida Statutes (1977) has the effect of terminating the parents' rights not unlike an adoption proceeding under Chapter 63 and, although an equally profound judicial act, the Legislature has specifically set out different criteria for the separate procedures. The courts may not depart from the plain language employed by the Legislature so as to place a construction on a statute which will require a departure from the natural meaning of the language used merely to satisfy the court's own predilection. Brooks v. Anastasia Mosquito Control District, 148 So.2d 64 (Fla. 1st DCA 1963); James Talcott, Inc. v. Bank of Miami Beach, 143 So.2d 657 (Fla.3d DCA 1962). The Legislature undoubtedly had good reason to adopt less stringent criteria in a commitment proceeding pursuant to Chapter 39, Florida Statutes. The paramount interest of society is in its concern for the well being of a child. The placement of a child in an environment where it can receive the proper support, nurture, maintenance, education, and inculcation of ethical values so that the child may attain the status of emancipation and be able to participate as a productive and law abiding citizen is the direct and immediate concern of a commitment proceeding. An adoption proceeding pursuant to Chapter 63, Florida Statutes, is essentially a contest between competing private parties seeking parental rights so that a child may receive permanent custodial status. Commitment proceedings, pursuant to Chapter 39, Florida Statutes, have as their object the termination of rights of nominal parents to afford a child a temporary place of refuge. There is significant legislative intent in the adoption of Sections 39.41(1)(d) and 39.01(1), Florida Statutes (Supp. 1978) so as to shorten the time interval and make the test of abandonment less stringent in order to prevent further damage and deterioration to the child left in the nominal care of a parent.
In this case, after the natural mother had been afforded competent counsel and afforded an opportunity to rehabilitate herself, she did not manifest the parental instinct and motivations sufficient to retrieve the child she allegedly desires to rear. Faced with this difficult task, we find the able trial judge gave the mother every consideration and opportunity to rehabilitate herself and under the circumstances had no alternative but to enter the permanent commitment order which is affirmed.
NOTES
[1] From that point on, the record demonstrates the mother has at all times been represented by court-appointed counsel.