424 So.2d 983 (1983)
Richard Edward HINKLE, Appellant,
v.
Leldon Leroy LINDSEY, Appellee.
In re the Adoption of Richard Edward Hinkle, Jr.
No. 81-935.
District Court of Appeal of Florida, Fifth District.
January 12, 1983.
*984 Garrett L. Briggs of Adams & Briggs, Daytona Beach, for appellant.
No appearance for appellee.
ORFINGER, Chief Judge.
Appellant Richard Edward Hinkle appeals a final judgment granting appellee's petition to adopt appellant's minor son, Richard E. Hinkle, Jr. The appellee is now married to the child's mother and the trial court approved the adoption, notwithstanding the absence of consent by appellant, on a finding that appellant had abandoned his child. We reverse.
At the outset we note that, except for only the direct testimony of appellee, all the testimony and evidence was presented to a special examiner, and the written record was then presented to the trial court for determination. Under those circumstances, the presumption of correctness which ordinarily attaches to the trial court's findings is slight, because the trial court has not seen and heard the witnesses, the appellate court has the same record before it as did the trial court, and has the same opportunity to weigh its evidentiary value. West Shore Restaurant Corp. v. Turk, 101 So.2d 123 (Fla. 1958); Conklin v. Pruitt, 182 So.2d 644 (Fla. 1st DCA 1968).
Richard E. Hinkle, Jr., was born to appellant and his ten wife, Marcia Kay Hinkle, in Victoria, Texas, on November 25, 1972. When the marriage fell apart, Marcia left the marital home in May, 1977, and with the child, moved to Ohio where she later filed an action for divorce. Appellant came to Ohio in February, 1978, for the final hearing in the divorce action, visited with his child on one or two occasions, and then took the child back to Texas with him. The final divorce decree awarded permanent custody of the child to Marcia, and she then moved to Daytona Beach with appellee Lindsey, following which she and Lindsey went to Texas to reclaim the child. After having physical custody of the child for four or five weeks, Hinkle turned the boy over to his mother, who with Lindsey and the boy, returned to Florida late in March, 1978. Marcia and appellee were subsequently married, and on August 14, 1980, appellee filed this petition for adoption.
Adoption, unknown to the common law, exists in Florida by virtue of chapter 63, Florida Statutes. Section 63.062, Florida Statutes (1981), provides in part:
63.062 Persons required to consent to adoption
(1) Unless consent is excused by the court, a petition to adopt a minor may be granted only if written consent has been executed after the birth of the minor by:
(b) The father of the minor, if:
1. The minor was conceived or born while the father was married to the mother... .
Additionally, section 63.072, Florida Statutes (1981), provides in part:
63.072 Persons whose consent to an adoption may be waived.
The court may excuse the consent of the following individuals to an adoption:
(1) A parent who has deserted a child without affording means of identification or who has abandoned a child;
Here, since the minor child was born during the marriage between the appellant (natural father) and Marcia Lindsey (natural mother) and there is no question of identification, the trial court had to find that the appellant had abandoned his child before it *985 could grant the petition in the absence of appellant's written consent.
Abandonment in this context has been defined as "conduct which manifests a settled purpose to permanently forego all parental rights and the shirking of the responsibilities cast by law and nature so as to relinquish all parental claims to the child." In the Interest of D.A.H., 390 So.2d 379, 381 (Fla. 5th DCA 1980); Solomon v. McLucas, 382 So.2d 339, 344 (Fla. 2d DCA 1980). Additionally, since permanent deprivation of a person's parental rights is a drastic step, all Florida district courts of appeal require a petitioner to present clear and convincing proof of the natural parent's abandonment.[1]See, e.g., In the Interest of D.A.H.; In re adoption of Cottrill, 388 So.2d 302 (Fla. 3d DCA 1980); Solomon v. McLucas; In re adoption of Noble, 349 So.2d 1215 (Fla. 4th DCA 1977); Durden v. Henry, 343 So.2d 1361 (Fla. 1st DCA 1977).
Although an inquiry into what is in the best interest of the child is important in ultimately deciding whether to grant a petition for adoption, before reaching that question, the threshold question of abandonment must first be determined. In re adoption of Cottrill; Solomon v. McLucas; Nelson v. Herndon, 371 So.2d 140 (Fla. 1st DCA 1979); In re adoption of Noble. The trial court cannot decide the case on the child's best interest unless the evidence first supports a finding of abandonment by the non-consenting natural parent.
While the shirking of parental duties and obligations may be evidence of the intention to permanently forego all parental rights, thus evidence of "abandonment," proof of such omission alone does not, as a matter of law, prove such abandonment. Failure of the non-consenting parent to pay required support for the child is not conclusive on the issue of abandonment, especially where the failure to provide support was because of unemployment or lack of assets, In re adoption of King, 373 So.2d 384 (Fla. 4th DCA 1979), or in retaliation to the custodial parent's actions in concealing the child's whereabouts and impairing visitation rights. Barrett v. Reed, 363 So.2d 14 (Fla. 1st DCA 1978).
Here, the evidence is far from "clear and convincing" that appellant exhibited conduct which "manifested a settled purpose to permanently forego his parental rights." Admittedly, he was behind in his support payments during the two-and-a-half-year period between the divorce and the filing of the adoption petition, but for at least one of those years, he was essentially unemployed. There is evidence that he sent some (the number of checks and amount are in dispute) support money. It is also undisputed that after moving to Daytona Beach, Marcia never gave appellant an address where he could contact his child, but only a post office box where the money could be sent. She telephoned appellant frequently to ask for the support money, but always from a public telephone, because she had no telephone in her home. Appellant contends that he withheld his support payments because he was not allowed to see his child. Although Marcia denies any overt denial of visitation rights, the record is clear that she made no effort to keep lines of communication open and gave appellant no way of making direct contact with his child. The record is also clear and undisputed that as soon as appellant was served with the adoption petition which disclosed the Lindseys' street address, he immediately appeared in Daytona Beach, went to the child's school and attempted to see him, but was not allowed to do so. He then appeared at the Lindsey home in another unsuccessful attempt to see his child. He testified that he had to be back at his job and left Daytona Beach without seeing the child because his efforts had been thwarted. He did return to Daytona Beach for the trial.
While we do not condone appellant's action in withholding child support during the time he could afford to pay, we are not dealing with a contempt or enforcement *986 action.[2] Neither can we or should we decide which of the two contestants would make the better parent, because that choice is not ours to make. Natural law gives appellant certain rights as the parent of the child, and these rights can be taken away only in strict compliance with the law. The record before us does not support a conclusion, by clear and convincing proof, that appellant's conduct manifested a settled purpose to forego his parental rights. On the contrary, it supports the conclusion that he was attempting to assert those rights.
The final judgment is therefore reversed, with directions to dismiss the petition for adoption.
REVERSED.
COBB and COWART, JJ., concur.
NOTES
[1] The United States Supreme Court has recently adopted the same position, Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
[2] While this adoption proceeding was pending, Marcia filed an action for support against appellant on January 26, 1981, under the Uniform Reciprocal Enforcement of Support Act and secured a judgment for support on April 22, 1981. Testimony in this adoption proceeding had concluded on February 16, 1981, and the final judgment appealed from was entered on June 22, 1981.