437 So.2d 713 (1983)
In the Interest of R.V.F., Jr., a Child.
No. 82-2451.
District Court of Appeal of Florida, Second District.
August 19, 1983.
Rehearing Denied September 15, 1983.
James R. Dirmann of Dirmann & Scott, Sarasota, for appellant.
Jordan L. Wallach of Sherr & Wallach, Sarasota, for appellee.
GRIMES, Acting Chief Judge.
The Florida Department of Health and Rehabilitative Services (HRS) seeks review of an order denying its petition for permanent commitment of a dependent child for subsequent adoption.
A detailed discussion of the facts is necessary for a proper understanding of the case. R.V.F., Jr., was born on August 9, 1979. The child and his half brother, W.W., were initially brought to a shelter care facility by their mother on October 22, 1979. Custody of R.V.F., Jr., was later returned to both parents by court order of December 13, 1979. A month later, his mother returned the child for shelter care placement because she was unable to take care of him. At this time, R.V.F., Jr.'s parents were separated, and the whereabouts of his father was unknown. R.V.F., Jr., was adjudicated dependent on January 25, 1980, and placed under the custody and control of HRS.
In February of 1980, R.V.F., Jr.'s father learned of his child's placement in shelter care and told a caseworker that he wanted the child back. He did not leave a forwarding address or phone number at this time. The next contact from the father was in July, 1980, when he called the caseworker and again showed interest in regaining custody of his son. He asked that his parents in North Carolina be studied as a possible placement for the child. The North Carolina home study did not recommend placement of the child with his paternal grandparents primarily because of financial and health reasons.
HRS filed a petition for permanent commitment on November 5, 1981. After the petition was filed, the father contacted HRS once again expressing interest in having the child. At the father's request, HRS ordered a home study in Texas for the purpose of determining whether the child could properly be placed with the father and his pregnant girlfriend with whom he was then living. This study recommended *714 against placing R.V.F., Jr., with his father at that time.
Counsel was appointed for the father and appeared with him at the hearing on August 17, 1982, to oppose the permanent commitment. The testimony presented at the hearing showed that from February of 1980 until December of 1981, the father provided no financial support for R.V.F., Jr., nor made any attempt to communicate or visit with him. The court denied the petition for commitment but ordered the child to remain in the temporary custody of HRS. The court directed that the father be given the opportunity to actively participate in a performance agreement with the goal of regaining custody of his son and retained jurisdiction to entertain another petition for commitment if the father failed to carry out the agreement.
Section 39.41, Florida Statutes (1981), provides:
39.41 Powers of disposition. 
(1) When any child is adjudicated by a court to be dependent, the court having jurisdiction of the child shall have the power, by order, to:
... .
(f) 1. Permanently commit the child to the department or a licensed childplacing agency willing to receive the child for subsequent adoption if the court finds that it is manifestly in the best interests of the child to do so, and:
a. If the court finds that the parent has abandoned, abused, or neglected the child; or
... .
In the order denying the petition for commitment, the court acknowledged that according to the definition of "abandoned" in section 39.01, Florida Statutes (1981), the father had abandoned R.V.F., Jr. However, the court characterized this as a technical abandonment and relied upon the explanation of abandonment in Interest of D.A.H., 390 So.2d 379 (Fla. 5th DCA 1980), to conclude that the father's manifestations of interest in regaining the child were sufficient to negate a complete abandonment. The problem with this analysis is that the opinion in Interest of D.A.H. specifically noted that it was relying on a case law definition of abandonment which predated the 1978 enactment of the statutory definition which now reads:
39.01 Definitions.  When used in this chapter:
(1) "Abandoned" means a situation in which a parent who, while being able, makes no provision for the child's support and makes no effort to communicate with the child for a period of 6 months or longer. If a parent's efforts to support and communicate with the child during such a 6-month period are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.
... .
The court also discounted the effect of the statutory definition by construing the word "may" which appears in the second sentence as giving the court discretion not to declare a child abandoned in spite of a parent's lack of support and communication for the six month period. To the contrary, our reading of the definition leads us to believe that the second sentence is designed merely to permit the court to declare a child abandoned even if a parent has made a marginal effort to assume parental duties. See Interest of C.M.H., 413 So.2d 418 (Fla. 1st DCA 1982), in which the statute was applied consistent with our interpretation.
The father did not contact either R.V.F., Jr., or HRS for a period of more than seventeen months prior to the filing of the petition for permanent commitment. He had provided no support since the child was declared dependent on January 25, 1980, even though the court found that he had the financial ability to do so. The father cannot hide behind his claim that he did not realize he should have paid support while the child was in foster care. The court was obviously impressed with the father's renewed interest in seeking to reacquire the child, but this cannot make up for the lengthy omission of support and communication which preceded the filing of the petition. Despite the court's misinterpretation of the statute, the findings of fact clearly demonstrate that the child was abandoned.
*715 The other statutory requirement for an order of permanent commitment is a finding "that it is manifestly in the best interests of the child." The court denied the petition on the premise that the child had not been abandoned, so the question of the child's best interests was never specifically addressed. However, to the extent that the order denying the petition implicitly carries with it a finding that permanent commitment was not in the child's best interests, there is simply no evidence in the record to support such a conclusion. Neither of the home studies requested by the father recommended placement. Three HRS experts testified that in their opinion it was in the child's best interests to be permanently committed for adoption. The HRS plan was for R.V.F., Jr., to be adopted by the couple which had already adopted his brother. As much as we are loath to interfere with the discretion of the trial judge in a case where the best interests of a child are involved, we are compelled to do so in this case.
We reverse the order entered below and direct that R.V.F., Jr., be permanently committed to HRS for subsequent adoption.
RYDER, J., and HANLON, MORTON J., Associate Judge, concur.