442 So.2d 365 (1983)
In the Interest of K.A.F., a Child.
Marie FAATZ, Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 81-1354.
District Court of Appeal of Florida, Fifth District.
December 8, 1983.
James R. Valerino, Orlando, for appellant.
Douglas E. Whitney and Samuel Patterson Stafford, Orlando, for appellee.
COBB, Judge.
This is an appeal by the mother, Marie Faatz, from an order permanently committing her child, K.A.F., to the custody of the Department of Health and Rehabilitative Services for adoption pursuant to section 39.41(1)(f), Florida Statutes (1981).[1] The sole issue on appeal is whether the circuit court erred in severing the rights of the mother based on a finding of "abandonment" as that term is defined in section 39.01(1), Florida Statutes (1981). That statute provides:

*366 39.01 Definitions.  When used in this chapter:
(1) "Abandoned" means a situation in which a parent who, while being able, makes no provision for the child's support and makes no effort to communicate with the child for a period of 6 months or longer. If a parent's efforts to support and communicate with the child during such a 6-month period are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.
The extensive evidence adduced at the termination hearing, held in September, 1981, revealed that K.A.F. was adjudicated dependent in February, 1980, and placed in a foster home. There was evidence presented that Faatz, although consistently refusing to agree to K.A.F.'s adoption, broke numerous appointments with H.R.S., evinced "no concern for the child" and never requested to visit with her. The order entered by the trial judge specifically found:
7. Since [the child] has been in foster care her mother has failed to make any effort to communicate or visit her child on any occasion. The Court specifically finds that while being able she had no contact with the child and it has been in excess of 18 months that she has not communicated or visited. Any effort or expression of concern from the mother has been so marginal that it did not evince a settled purpose to assume all parental duties. For this reason, [the child] has been abandoned by her mother.
The appellant acknowledges that the trial court's finding in regard to the absence of contact for more than 18 months is supported by the evidence. Faatz argues, however, that the evidence also indicated that she was not "able" to make provision for the child's support and understand her visitation opportunities, due to her poverty and lack of education. H.R.S., on the other hand, points to contravening evidence in the record of the mother's indifference and irresponsibility which supports the determination by the trial judge. We agree that there was ample evidence to support the trial judge's finding of abandonment based upon the statutory definition. There also was ample evidence to support the trial judge's finding that the order of permanent commitment was in the best interest of the child.[2]
We note that the appellant has not raised any challenge to the constitutionality of section 39.01(1), either at trial or on appeal; therefore, we decline to determine that issue in this case.[3]See Hegeman-Harris Co., Inc. v. All State Pipe Supply Co., Inc., 400 So.2d 1245 (Fla. 5th DCA), review dismissed, 411 So.2d 380 (1981); Allied General Contractors v. Superior Asphalt Co., 397 So.2d 727 (Fla. 5th DCA 1981).
Accordingly, the order of permanent commitment entered below is
AFFIRMED.
ORFINGER, C.J., and DAUKSCH and FRANK D. UPCHURCH, Jr., JJ., concur.
SHARP and COWART, JJ., dissent with opinions.
SHARP, Judge, dissenting.
I dissent in this case because I do not think the record sustains the trial court's conclusion that Faatz abandoned her child as defined in section 39.01(1), Florida Statutes (1981). Whether abandonment is proved by statute or by other means, the proofs offered by the state must be by clear and convincing evidence. Hinkle v. *367 Lindsey, 424 So.2d 983 (Fla. 5th DCA 1983).
HRS proved that Faatz failed to cooperate with its social workers in working out a plan to regain custody of her child. She failed or was unable to meet their requirements for employment, attending parenting classes, and obtaining mental health counseling. She did not keep all of the appointments the HRS social workers made for her to come to their office and discuss her failings. Although Faatz was not entitled to have the child returned to her custody under the circumstances, I do not think Faatz abandoned her child, given her poor economic circumstances and low mentality.
HRS had custody of the child after she was declared to be dependent, when she was approximately five months old. During the time the six month abandonment time period was running, Faatz did not know where her year old baby was living. She asked a social worker where the baby was being kept, when she was first put in a foster home. But the worker told Faatz she could not be told. She testified she would have visited her, if permitted. She did not know that HRS could have arranged visitation at its office, had she asked. Faatz testified the social workers did not tell her about her visitation rights. She did attend all of the court hearings concerning the child, in December of 1980 and September 1981.
Under these circumstances, I do not think HRS showed by clear and convincing evidence that Faatz was "able to communicate," section 39.01(1), with her child, and the finding of abandonment should not therefore be based on her failure to do so. Nor was it shown that Faatz was "able" to support the child at any time, section 39.01(1), so abandonment should not be based on that aspect of the definition. Clearly it is in the best interest of this child to be adopted. But if that is the real reason for this decision, we ought to acknowledge it.
COWART, Judge, dissenting:
In Hinkle v. Lindsey, 424 So.2d 983 (Fla. 5th DCA 1983), this court recognized that the adoption of a child by another acts to permanently and totally terminate the parental rights of the replaced natural parent and that a child cannot be adopted and the rights of the natural parent cannot be terminated without the express consent of the natural parent unless the natural parent has abandoned his or her parental rights. Following general law Hinkle held that such abandonment must be shown by clear and convincing evidence of
conduct which manifests a settled purpose to permanently forego all parental rights and the shirking of the responsibilities cast by law and nature so as to relinquish all parental claims to the child. Id. 985.
This case similarly involves a question of whether there is clear and convincing evidence that Marie Theresa Faatz abandoned her parental rights in and to her child, Kimberly, so as to authorize a court of law to permanently terminate her parental rights and, pursuant to section 39.41(1)(f)1.a, Florida Statutes (1981), to permanently commit the child to a state or other agency for subsequent adoption.
This case was regularly assigned for consideration to a three judge panel of this district court of appeal. After consideration of the case two of panel members were in full accord and agreement with the language quoted from Hinkle above which describes an abandonment of parental rights as relating not only to the neglect of parental duties but also as requiring an intentional and voluntary, total and permanent relinquishment of all parental rights. The panel majority noted that the definition of abandonment in section 39.01(1), Florida Statutes (1981), related only to neglect of parental duties, and, agreed that while neglect of parental duties as described in section 39.01(1), Florida Statutes, was a sufficient basis to adjudicate dependency and to deprive natural parents of custody of children under chapter 39, Florida Statutes, the panel majority were of the opinion, consistent with Hinkle, that "abandonment" of parental rights such as to authorize an adjudication permanently terminating *368 them under section 39.41(1)(f)1.a, Florida Statutes (1981), required the same clear and convincing evidence of a voluntary "settled purpose [intent] to permanently forego [relinquish] all parental rights" as was held in Hinkle to be required for an unconsented adoption based on abandonment under section 63.072(1), Florida Statutes (1981). This in effect was a holding that, constitutionally, parental rights cannot be forfeited[1] by the state because a natural parent did not perform such parental duties as the state might set as minimal standards. The panel majority noted that intent to permanently relinquish all parental rights could be effected expressly or established by direct proof or by circumstantial evidence as to words and conduct of the natural parent and that in the latter case constitutional due process required the evidence to be clear and convincing. The panel majority then, as in Hinkle, reviewed the evidence in this case and found it insufficient to meet the constitutional standard and concurred in a decision to reverse the judgment terminating appellant's *369 parental rights and wrote a proposed opinion. One member of the original panel disagreed with the panel majority view as to the construction of the statute and as to the sufficiency of the evidence and dissented and sought an en banc consideration of this cause and a favorable en banc majority. This was obtained on the basis that the proposed panel majority decision was in potential conflict with Hinkle.
Schreiber v. Chase Federal Savings and Loan Association, 422 So.2d 911 (Fla. 3d DCA 1982), holds that maintenance of uniformity in the court's decisions (Fla.App. Rule 9.331(a)) means the same as decisional conflict as defined by the supreme court in Nielsen v. City of Sarasota, 117 So.2d 731 (Fla. 1960), and Kyle v. Kyle, 139 So.2d 885 (Fla. 1962). Nielsen describes such conflict as
(1) the announcement of a rule of law which conflicts with a rule previously announced by the court; or (2) the application of a rule of law to produce a different result in a case which involves substantially the same controlling facts as a prior case disposed of by the court.

Nielsen, 117 So.2d at 734.
Kyle holds that decisional conflict
must be such that if the latter decision and the earlier decision were rendered by the same court, the former would have the affect of overruling the latter.

Kyle, 139 So.2d at 887.
The statutes involved in this case, and their construction, were not involved in Hinkle. The proposed panel majority opinion adopted and applied the same standard of proof (clear and convincing evidence) to the same definitional rule of law (abandonment of parental rights requires a voluntary relinquishment, express or implied by conduct) utilized in Hinkle. Of course, the sufficiency of the evidence in Hinkle has no bearing on the sufficiency of the evidence in this case; nevertheless, the panel majority in this case did find the evidence insufficient exactly as the panel in Hinkle found the evidence insufficient in Hinkle. Therefore, in no way did the proposed panel majority opinion in this case conflict with Hinkle. The substance of the proposed panel dissent was that the principles applied in Hinkle should not be applied in this case because of the restrictive definition of abandonment contained in section 39.01(1), Florida Statutes.
It is important to note that the majority en banc opinion does not cite or rely on Hinkle. Query: How is it that the panel's proposed reversal in this case would have constituted a decisional conflict with Hinkle and yet Hinkle not be even relevant or germane to the en banc affirmance? The en banc majority should either express direct conflict with Schreiber or follow that decision and having invoked en banc jurisdiction in this case on the assertion that a reversal in this case would conflict with Hinkle the en banc majority should at least attempt to demonstrate that conflict in the face of this challenge.[2]
Section 4(a), Art. V, of the Constitution of the State of Florida provides that in district courts of appeal "three judges shall consider each case and the concurrence of two shall be necessary to a decision." That constitutional provision has absolutely no meaning if a majority of the judges on a district court of appeal, disagreeing with the view of some proposed panel majority decision, can, by merely claiming an en banc hearing is necessary to maintain uniformity in the court's decisions, act under Florida Appellate Rule 9.331 to wrestle jurisdiction of a particular case away from the panel to which it was assigned and decide it according to a different view of the law or facts and do this without the proposed panel majority opinion ever being published or the claimed conflict issue ever being briefed, argued or conferenced. This occurred the first time on this court in Torrence v. State, 440 So.2d 392 (Fla. 5th DCA 1983), and each instance needs to be noted for whatever value it may have and for *370 consideration by anyone concerned with the constitutional problem involved in the present en banc rule as it is being used. As here and in Torrence en banc jurisdiction can be decisive in a particular case. En banc jurisdiction is important beyond the resolution of the particular case and its effect on the body of law. Its employment can constitute an end run around the constitution which is so effective as to be subject to no defense or review. I dissent from its use in this case. While an en banc rule, properly worded and employed, is desirable the legality of the present rule is questionable because Florida Constitution makes no provision for en banc jurisdiction in the district courts of appeal. Accordingly, en banc jurisdiction should be cautiously exercised. A litigant who has presented his appeal to a district court of appeal panel in accordance with the constitution, the appellate rules and constitutional due process and has won it fair and square, should not be deprived of the result by an en banc majority which merely disagrees with the rationale or result in the given case and under circumstances where the litigant cannot obtain review of the jurisdictional issue involved in the claimed conflict. The en banc rule should be amended or construed to require that en banc decisions affirmatively demonstrate decisional conflict subject to review by the supreme court.
NOTES
[1] Section 39.41(1)(f)1a, Florida Statutes (1981), provides:

(1) When any child is adjudicated by a court to be dependent, the court having jurisdiction of the child shall have the power, by order, to:
(f)1. Permanently commit the child to the department or a licensed child-placing agency willing to receive the child for subsequent adoption if the court finds that it is manifestly in the best interests of the child to do so, and:
(a) If the court finds that the parent has abandoned, abused or neglected the child; ...
[2] The public policy of Florida favors a permanent family life for children rather than merely an indefinite protective custody. See § 63.022, Fla. Stat. (Supp. 1982).
[3] Several courts, however, including this one, previously have applied the "abandonment" test set out in section 39.01(1). See In Interest of R.V.F., Jr., 437 So.2d 713 (Fla. 2d DCA 1983); In Interest of C.M.H., 413 So.2d 418 (Fla. 1st DCA 1982); In Interest of J.F., 384 So.2d 713 (Fla. 3d DCA 1980); P.S. v. State, 384 So.2d 656 (Fla. 5th DCA 1980).
[1] In law a forfeiture is the involuntary loss or deprivation of a right in consequence of the neglect, breach or other nonperformance of some duty, obligation or condition that the right is held subject to, or conditional or dependent upon. By contrast in legal theory abandonment is correctly defined only as a voluntary relinquishment of a right by the person having it with the intention of permanently terminating it but without vesting it in any other person. The very essence and nature of the legal concept of abandonment as a lawful means of terminating a right is its voluntary and intentional nature and it is this character that permits many rights to be voluntarily renounced, relinquished and abandoned that cannot lawfully be forfeited. Citizenship is an example. Under our form of government, with rights secured by constitutional guarantees, the rights of citizenship are secure from forfeiture. By failing to meet duties and obligations, such as obedience to laws, citizens can forfeit aspects of citizenship, such as personal freedom and even life, but the right of citizenship itself cannot be forfeited for neglect of corollary duties. Certainly the rights that arise from the God-given relationship of parent and child are among those rights guaranteed citizens by the federal and state constitutions to be inalienable by government. Parental duties may be enforced by law and, for neglect of parental duties of care, in the best interests of the child parents may be deprived of actual custody, but parental rights should not be permanently forfeited for neglect of parental duties in the absence of their voluntary and intentional relinquishment. The real substance of the en banc majority opinion is that in Florida, constitutionally, all parental rights can be permanently forfeited if, in the opinion of one judge, a parent's efforts during any six month period "do not evince a settled purpose to assume all parental duties." (§ 39.01(1), Fla. Stat.) I dare say that a large segment of the public and bench and bar does not realize that to be true and therefore it should be announced loud and clear. On the other hand if parental rights can only be voluntarily and intentionally relinquished by consent to adoption by others or by true abandonment and cannot be constitutionally forfeited then the application of section 39.41(1)(f)1.a., Fla. Stat., read in combination with section 39.01(1), Fla. Stat., inherently presents the legal question of whether the state can ignore the substance of the legal concept of abandonment and redefine the word "abandonment" so as to eliminate its voluntary and intentional nature as a lawful relinquishment of a right and define it only in terms of a right lost as the result of a neglect or failure to meet some corollary parental duty, which is, in truth, a forfeiture. Once it is established, as by this case, that the state can constitutionally define parental duties, the nonperformance of which constitutes a legal "abandonment" of all parental rights, there is no longer any constitutional limitation on that device and, this case establishes that the "sole issue" is whether there is evidence to support a finding that the natural parent neglected to perform the minimal parental duties defined by statute. As Judge Sharp points out, in this case the state would not tell the mother the location of the foster home where her baby was located and the mother's "efforts to support and communicate with the child during a six month period" were considered to be "only marginal" by HRS and the trial judge. As a lexical definition of the meaning of "abandonment" as that word connotes the legal consequence of a voluntary and intentional relinquishment, the definition in section 39.01(1), Fla. Stat., is false in that it takes away the legal meaning of the word "abandonment." Euphemistically misdescribing the true meaning of words to accomplish some social or political purpose is not uncommon in politics but to call a forfeiture an "abandonment" does not make it so in substance or in law and the judiciary should face up to the truth and not apply the lawful consequence of an affirmative volitional act intended to accomplish a relinquishment to conduct which does not in truth describe a voluntarily intended relinquishment of parental rights. The use of these statutes to change the meaning of a word and to cause it to denote its opposite meaning to accomplish government policy is an excellent example of The B Vocabulary in George Orwell's book 1984.
[2] Assuming en banc jurisdiction in this case because a reversal would be in "potential conflict" with Hinkle is like involuntarily committing a teetotaler to an alcoholic treatment center because he is a "potential alcoholic."