IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

S.M.K.,

      Appellant,

 v.                                       Case No. 5D17-1751

S.L.E., C.C. and M.C.,

      Appellee.

_____/

Opinion filed March 2, 2018

Appeal from the Circuit Court
for St. Johns County,
John M. Alexander, Judge.

William S. Graessle and Jonathan W.
Graessle, of William S. Graessle, P.A.,
Jacksonville, and J. Stephen Alexander, of
Alexander Law Firm, LLC, St. Augustine, for
Appellant.

Bryan M. Callaway, of Robert P. Eshelman,
P.A., Jacksonville, for Appellee, S.L.E.

No Appearance for C.C. and M.C.

COHEN, C.J.

      This case involves a natural parent's constitutional right to raise his own child, even if that determination is not necessarily in the best interest of the child. For the reasons set forth below, we reverse the order terminating S.M.K's ("Father") parental rights, which deemed Father's consent unnecessary for the relative adoption of O.R.K. ("Child"), pursuant to section 63.062(2), Florida Statutes (2016). The trial court found that Father

had abandoned Child. During the proceedings, Father's knowledge of Child's whereabouts was a critical issue in the court's determination.

In September 2015, S.L.E. ("Mother") gave birth to Child in Florida. There is no disagreement regarding Father's paternity. Soon after Child's birth, the family traveled to Indiana. The reason for the trip was in dispute, although both parties acknowledged that Father was renovating a house in Indiana. At one point, Mother testified that she believed the trip was a short term visit. At another point, she testified that the three were planning to move into the house, but when they arrived the house was uninhabitable.[1] Father testified that the trip was intended to be a permanent move.

Mother claimed that a few weeks after arriving in Indiana, Father stole her car and "went on a crack bender." In late November 2015, Mother returned to Florida with Child without Father's consent. Upon returning to Florida, Mother and Child temporarily lived with M.C. ("Aunt") and C.C. ("Uncle") in St. Augustine. Mother left with Child in January 2016 and returned to her place of residence, which was a boat in Titusville. Within a week, Mother returned Child to Aunt because she was unable to care for Child herself.[2]

Father remained in contact with Mother subsequent to her departure, and in December 2015, followed Mother to Florida, residing in the Bradenton area with his sister. Father arranged a meeting with Mother in Daytona Beach and drove there from

---

[1] Pictures of the Indiana property admitted into evidence supported Mother's assessment of the living conditions.

[2] Mother consented to the proposed relative adoption of Child by Aunt and Uncle, has had minimal contact with Child since leaving Child with Aunt and Uncle, and has not financially supported Child.

Bradenton, but minutes before the meeting and despite knowing Father had driven from Bradenton, Mother informed him that she would not attend.

In February 2016, Father requested that the Manatee County Sheriff's Department perform a wellness check on Child. Father provided law enforcement Aunt and Uncle's address as a possible location. He did not hear back from law enforcement on the results of the check, nor did he inquire.

While Mother claimed she communicated with Father through texts and that Father knew Child was living with Aunt and Uncle, Mother failed to produce any of the text messages to substantiate that claim. Father maintained that he did not know the whereabouts of Child: Child could have been at Aunt's home, at maternal grandmother's home, with Mother on her boat, or wherever else Mother was residing.

Mother also claimed that Father did not financially support her during their relationship or her pregnancy, maintaining that Father only marginally assisted with Child's care while in Indiana. Mother described her relationship with Father as "abusive, tumultuous," and testified that the police were called several times during their relationship. The volatility of the relationship was echoed by Aunt, who described Father as abusive and threatening toward Mother. Mother also testified that Father has four other children, all of whom he has abandoned.[3]

---

[3] The trial court took judicial notice of Father's previous child support case, which indicated that he had been found in contempt of court for failing to support three children from a previous marriage, had been incarcerated twice for failure to pay child support, and was over $330,000 in arrears in alimony and child support payments.

In May 2016, Father filed a complaint to establish paternity of Child in St. Augustine.[4] He listed Mother as respondent and Aunt and Uncle as interested parties. As of the filing date of the complaint, Child was less than one year old and residing with Aunt and Uncle.[5] Mother and Aunt opposed the complaint, claiming that Father was abusive, unemployed, lacked a permanent residence in Florida or transportation, and had failed to financially support Child.

The trial court entered a final judgment of paternity finding Father to be Child's biological father and reserving jurisdiction to decide timesharing, child support, and related issues. The court later granted Father visitation with Child.

Aunt and Uncle filed a joint petition to terminate parental rights and for the relative adoption of Child, which sought to deem Father's consent to the adoption unnecessary. Following an evidentiary hearing, the court granted the petition, deeming Father's consent unnecessary pursuant to section 63.062(2), Florida Statutes (2016), and finding that Father abandoned Child.

Our review of the trial court's order is limited to determining whether there was clear and convincing evidence that Father abandoned Child. See Hinkle v. Lindsey, 424 So. 2d 983, 985 (Fla. 5th DCA 1983). In deeming Father's consent unnecessary, the trial court concluded that "Mother did interfere with the Father's timesharing but in response the Father at best, made a lackadaisical halfhearted effort to see his child and made little

---

[4] Father had previously filed a paternity action in Indiana in November 2015, which was dismissed for unknown reasons.

[5] Aunt and Uncle have been the de facto parents of Child since at least January 2016. The record indicates that they have provided Child a stable and loving home.

4

or no effort to support his child, until Court ordered [Father] to do so." The court's order focused primarily upon Father's lack of financial support of Child to conclude that Father failed to demonstrate a "full commitment" to being a parent to Child.

Section 63.062(1) provides that the consent of certain persons is required before an adoption petition may be granted. See § 63.062(1), Fla. Stat. (2016). Nonetheless, a finding of abandonment under section 63.089(3) waives the consent requirement of any persons under section 63.062(1). See id. § 63.089(3)–(4); see also J.C.J. v. Heart of Adoptions, Inc., 989 So. 2d 32, 35 (Fla. 2d DCA 2008) ("Abandonment waives the biological father's right to oppose adoption."). Section 63.032(1), Florida Statutes (2016), defines "abandoned" as follows:

> (1) "Abandoned" means a situation in which the parent or person having legal custody of a child, while being able, makes little or no provision for the child's support or makes little or no effort to communicate with the child, which situation is sufficient to evince an intent to reject parental responsibilities. If, in the opinion of the court, the efforts of such parent or person having legal custody of the child to support and communicate with the child are only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned. In making this decision, the court may consider the conduct of a father towards the child's mother during her pregnancy.

In addition, section 63.089(4) provides that a finding of abandonment under section 63.032(1) must be supported by clear and convincing evidence and identifies additional factors for the court's consideration:

> A finding of abandonment may also be based upon emotional abuse or a refusal to provide reasonable financial support, when able, to a birth mother during her pregnancy or on whether the person alleged to have abandoned the child, while being able, failed to establish contact with the child or accept responsibility for the child's welfare.

5

(a) In making a determination of abandonment at a hearing for termination of parental rights under this chapter, the court shall consider, among other relevant factors not inconsistent with this section:

1. Whether the actions alleged to constitute abandonment demonstrate a willful disregard for the safety or welfare of the child or the unborn child;

2. Whether the person alleged to have abandoned the child, while being able, failed to provide financial support;

3. Whether the person alleged to have abandoned the child, while being able, failed to pay for medical treatment; and

4. Whether the amount of support provided or medical expenses paid was appropriate, taking into consideration the needs of the child and relative means and resources available to the person alleged to have abandoned the child.

§ 63.089(4), Fla. Stat. (2016). Here, the trial court made no specific findings under sections 63.032(1) or 63.089(4). Furthermore, it disregarded the evidence that Father did not know with certainty where Child was residing. Father would have no way of knowing either where or to whom to send financial support. When Mother left Indiana, she took Child without Father's consent and without providing Father an address where she and Child would be living.

Father's actions subsequent to Mother's departure do not constitute clear and convincing evidence of abandonment. Father filed a paternity action in Indiana in November 2015. Father then came to Florida in December 2015 and arranged the meeting with Mother in Daytona Beach, just weeks after her return to Florida. After the failed meeting, Father requested a wellness check on Child in February 2016. Father filed a paternity action in Florida in May 2016. While the complaint alleged that Child resided with Aunt and Uncle, it is not clear whether Father knew that with certainty. His efforts to

6

call Aunt were unsuccessful, as was his attempt to locate Child by going to Aunt and Uncle's home. His efforts to obtain information from Mother as to Child's whereabouts were also unsuccessful. The first time Father definitively knew Child's location was when he was served with Aunt and Uncle's petition to terminate parental rights and for relative adoption.

Under these circumstances, the trial court misplaced reliance on Father's failure to provide past support for Child in concluding that he abandoned Child. The failure to pay support is a factor to consider in determining whether a party has abandoned a child, but it alone is not conclusive to support a finding of abandonment. See M.A.F. v. E.J.S., 917 So. 2d 236, 237 (Fla. 5th DCA 2005). Here, the court primarily focused on Father's actions prior to being adjudicated Child's father in June 2016. Since December 2016, when the court ordered Father to provide support, he complied with that order and provided support through the time of the termination hearing in April 2017. The court granted Aunt and Uncle's request that Father be drug tested and he passed every test administered.[6] Since Father had been living in Florida, he had not missed any visitation with Child.

The trial court's ruling is understandable. If the legal standard were the best interest of the child, we would affirm that determination. However, that is not the legal standard. Rather, there must be clear and convincing evidence that Father's actions "manifested a settled purpose to forego his parental rights." See Hinkle, 424 So. 2d at 986. Termination of Father's rights can only be accomplished through "strict compliance with the law." See id. In this case, the record does not support a finding, by clear and

---

[6] Both parents contended that the other had substance abuse issues.

7

convincing evidence, that Father's actions "manifested a settled purpose to forego his parental rights." See id. Instead, the record "supports the conclusion that he was attempting to assert those rights." See id. Therefore, we reverse the order terminating Father's parental rights.

REVERSED AND REMANDED.

EVANDER and WALLIS, JJ., concur.