589 So.2d 359 (1991)
Donna Tucker WILLIAMS, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 91-231.
District Court of Appeal of Florida, Fifth District.
November 7, 1991.
Rehearing Denied December 13, 1991.
Kevin Kitpatrick Carson, Kevin "Kit" Carson, P.A., Daytona Beach, for appellant.
Ellen D. Phillips, Asst. Dist. Legal Counsel, Dept. of Health and Rehabilitative Services, Daytona Beach, for appellee.
W. SHARP, Judge.
Williams appeals from a final order which terminates her parental rights to the younger two of her six children: Joanna (age 6 1/2), and Jacob (age 3 1/2). The trial court made findings that Williams was informed of her right to counsel at the dependency hearing, that she substantially failed to complete the performance agreements for reasons not related to lack of financial resources, and that she is unable or undisposed to provide for these children due to her continuing drug addiction, criminal activity, and failure to provide emotional or financial support while the children were in foster care. While we agree with the trial judge that it is manifestly in the best interests of the children that Williams' parental rights be terminated and that their foster families be permitted to adopt them, we must reverse this case because based on the record before us all of the required elements justifying termination of parental rights were not established by clear and convincing evidence.[1]
*360 In Belflower v. Department of Health & Rehabilitative Services, 578 So.2d 827 (Fla. 5th DCA 1991) and Department of Health and Rehabilitative Services v. Zeigler, 587 So.2d 602 (Fla. 5th DCA 1991), we held that one essential element which must be established by clear and convincing evidence at termination of parental rights hearings to sustain on appeal an order terminating such rights, is proof that the parent was advised of his or her right to counsel at the dependency hearing.[2] In this case, both Williams and her friend, Francis Goodrich, who attended the hearings with her, testified that she was not offered counsel rights at the dependency stage. A clerk who works at the juvenile court was called to testify, but she had no recollection about the dependency hearing involving Jacob and Joanna. She could only say that the court usually advises parents of their rights to counsel at dependency hearings.
The record on appeal sheds no light on this issue. The dependency procedure which took place January 25, 1988 and which apparently involved both children, is not included in the record on appeal. The record does show that counsel was appointed for Williams on June 28, 1990, approximately 1 1/2 years after HRS filed Judicial Review Reports in both cases, recommending termination of parental rights. The only mention of advising Williams about her right to counsel appears in a Foster Care Review Checklist, evidently post the dependency hearing stage, in which a social worker indicates she so advised Williams.
Although we reverse on the above stated ground, we further note that appellee failed to prove by competent evidence the substantive grounds alleged in the petitions to terminate parental rights. Both cases are identical. The stated grounds were abandonment and neglect.
However, at the termination proceedings, no witness with any personal knowledge of any conduct by Williams which might constitute neglect (lack of supervision) or abandonment was presented. Instead, appellee relied on reports filed by various HRS employees, commencing November, 1987. But each witness denied any personal knowledge of Williams or her home, and the conditions which led to removal of the six children from her home.
The content of these types of reports is clearly hearsay.[3] In some it is compounded to double and triple levels. Alone, they cannot constitute proof by clear and convincing evidence.
We are further troubled by the finding that Williams did not substantially perform her performance agreement, not due to lack of financial resources. The performance agreements in the record are exceedingly long and complex. Williams is a person of limited education (8th grade only), and she testified she did not understand the papers. Although an HRS employee, Brockington, gave them to her, she did not explain them. When Williams first received the papers, she was in jail.
The position of HRS was that Williams had only six months (commencing February 1988) in which to complete the numerous provisions of the performance agreement. What she did after that was not relevant. However, as various HRS employees well knew, Williams was in jail a considerable part of 1988. She was also unemployed and had no practical way to achieve most of the provisions of the performance agreements. Other witnesses, including Williams, testified she subsequently (in 1989 and 1990) completed the HRS required parenting classes and the drug testing and rehabilitation classes, that she is close to obtaining her G.E.D., and that she has obtained and is currently holding a full-time job. At this point, Williams has achieved most of the performance agreement requirements.
Appellee also sought to prove that Williams is not interested in her children *361 because for the last year she ceased to contact them, visit them, or send support gifts or cards to them. However, the witnesses for HRS candidly admitted they were aware that the court had entered an order April 10, 1989 which terminated Williams' visitation rights, and ordered her to have no further contact with her children.
Prior to that time, she visited with them as often as HRS could or would arrange supervised visits for all six children at once. The guardian ad litem and social worker agreed these visits were not easily managed, but Williams was offered no alternative visitation. She also brought Christmas and birthday gifts to HRS for the children. Apparently not all of the gifts were delivered to the children. This is not a typical picture (which we sometimes see) of a parent who has expressed no interest or concern for his or her children over a substantial period of time.
Accordingly, we reverse the orders terminating Williams' parental rights to Joanna and Jacob, and we remand for further proceedings consistent with Belflower and Zeigler. See also In the Interest of R.J., L.B., L.J., & T.J., 586 So.2d 496 (Fla. 1st DCA 1991).
REVERSED and REMANDED.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] Smith v. Department of Health and Rehabilitative Services, 522 So.2d 956 (Fla. 1st DCA 1988); Slomowitz v. Walker, 429 So.2d 797 (Fla. 4th DCA 1983); State v. Graham, 240 So.2d 486 (Fla. 2d DCA 1970).
[2] § 39.467(2)(c)1., Fla. Stat. (1989).
[3] See Rock v. State, 584 So.2d 1110 (Fla. 1st DCA 1991); Williams v. State, 553 So.2d 365 (Fla. 5th DCA 1989); L'Homme v. State, 518 So.2d 408 (Fla. 1st DCA 1988); Camp v. State, 501 So.2d 81 (Fla. 1st DCA 1987); Town of Belleair v. Taylor, 425 So.2d 669 (Fla. 2d DCA 1983).