623 So.2d 780 (1993)
Rachel KINGSLEY, Appellant/Cross-Appellee,
v.
Gregory KINGSLEY, et al., Appellees/Cross-Appellants.
Nos. 92-2430, 92-2446.
District Court of Appeal of Florida, Fifth District.
August 18, 1993.
*782 Jane E. Carey, Harry Morall, and Cecilia Norton Ford, Orlando, for appellant, cross-appellee.
Jerri A. Blair, Blair & Cooney, P.A., Tavares, for appellee, cross-appellant Gregory K.
Catherine A. Tucker, Legal Aid Soc. of Orange County Bar Ass'n, Inc., Orlando, for guardian ad litem.
George H. Russ, Sellar, Sewell, Russ & Saylor, P.A., Leesburg, for appellees, cross-appellants George R., Lizabeth R., Robert R., Amy R., Tiffany R., Bryan R., John R. and Melanie R.
James A. Sawyer, Dist. Legal Counsel, Orlando, for appellee Dept. of Health and Rehabilitative Services.
A. Matthew Miller, Hollywood, Nancy S. Palmer, Maitland, and Deborah Marks, North Miami, for amicus curiae The Family Law Section of FL Bar.
Lewis Pitts and Gayle Korotkin, Southern Justice Institute, Durham, NC, and Lou Tally, Mt. Dora, for amici curiae Nat. Child Rights Alliance, et al.
Christina A. Zawisza, Director, Children First, Legal Services of Greater Miami, Inc., Miami, and Michelle Hankey of Legal Aid Soc. of Palm Beach County, West Palm Beach, for amici curiae Children First and Legal Aid Soc. of Palm Beach County.
DIAMANTIS, Judge.
Rachel Kingsley, the natural mother of Gregory, a minor child, appeals the trial court's final orders terminating her parental rights based upon findings of abandonment and neglect, and granting the petition for adoption filed by Gregory's foster parents, George and Elizabeth Russ.[1] George Russ, on behalf of Gregory, appeals the trial court's order denying his motion for summary judgment regarding the applicable burden of proof. We affirm the trial court's orders terminating Rachel's parental rights and denying the motion for summary judgment; however, we reverse the trial court's order granting the adoption petition.
On June 25, 1992, Gregory, then 11 years of age, filed in the juvenile division of the circuit court a petition for termination of the parental rights of his natural parents. He separately filed, in the civil division of the circuit court, a complaint for declaration of rights and adoption by his foster parents. This adoption was later transferred to the juvenile division by court order. On July 21, 1992, the trial court ruled that Gregory, as a natural person who had knowledge of the facts alleged, had standing to initiate the action for termination of parental rights. In that order, the trial court implicitly accorded Gregory capacity to file the petition although he was an unemancipated minor. Prior to entering this order, the trial court, noting that there was a distinction between the roles of guardian ad litem and attorney ad litem, appointed one of Gregory's attorneys, Jerri A. Blair, as his attorney ad litem.[2] The trial court made no ruling concerning Gregory's standing to file the adoption petition; however, Gregory's foster parents filed a petition for adoption on September 3, 1992, with the written consent of Gregory and Gregory's *783 natural father.[3] Between August 11, 1992, and September 11, 1992, four additional petitions for termination of parental rights were filed on behalf of Gregory: the August 11, 1992, petition by George Russ, the foster father; the August 25, 1992, petition by Catherine A. Tucker, Gregory's guardian ad litem; the September 10, 1992, petition by the Department of Health and Rehabilitative Services (HRS); and the September 11, 1992, petition by Elizabeth Russ, the foster mother.[4] On September 17, 1992, Gregory filed an amended petition for termination of parental rights, and on September 18, 1992, Gregory's foster family filed a notice that its members were joining in, and adopting, Gregory's amended petition for termination of parental rights.
This matter proceeded to trial on September 24 and September 25, 1992. The court, over Rachel's objection, tried the termination of parental rights proceeding and the adoption proceeding at the same time pursuant to its earlier order allowing the two cases to travel together. After the various parties had presented their positions, the trial court, orally on the record, terminated Rachel's parental rights. Rachel immediately filed her notice of appeal in open court, contending that the appeal suspends and supersedes the adoption proceeding.[5] The trial court, however, proceeded orally to grant the adoption petition filed by Gregory's foster parents. Subsequently, on October 13, 1992, nunc pro tunc to September 25, 1992, the trial court entered a written judgment which terminated Rachel's parental rights and a separate written judgment which granted the adoption.

1. CAPACITY
Rachel contends that the trial court erred in holding that Gregory has the capacity to bring a termination of parental rights proceeding in his own right. Specifically, Rachel argues that the disability of nonage prevents a minor from initiating or maintaining an action for termination of parental rights. We agree.
Capacity to sue means the absence of a legal disability which would deprive a party of the right to come into court. Keehn v. Joseph C. Mackey & Co., 420 So.2d 398, 399 n. 1 (Fla. 4th DCA 1982); Argonaut Insurance Co. v. Commercial Standard Insurance Co., 380 So.2d 1066, 1067 (Fla. 2d DCA), rev. denied, 389 So.2d 1108 (Fla. 1980); General Development Corp. v. Kirk, 251 So.2d 284, 286 (Fla. 2d DCA 1971); Earls v. King, 785 S.W.2d 741, 743 (Mo. Ct. App. 1990); Parker v. Bowron, 40 Cal.2d 344, 254 P.2d 6, 9 (1953); 59 Am.Jur.2d Parties §§ 24, 30 (1987). See also Moorhouse v. Ambassador Insurance Co., 383 N.W.2d 219 (Mich. Ct. App. 1985).
In Earls v. King, 785 S.W.2d 741 (Mo. Ct. App. 1990), the court succinctly set forth the legal effect of the concept of capacity to sue:
Capacity to sue is the right to come into court which exists if one is free of general disability, such as infancy or insanity. Nearly all adults have capacity to sue.
Earls, 785 S.W.2d at 743.
Courts historically have recognized that unemancipated minors do not have the legal capacity to initiate legal proceedings in their own names. This historic concept is incorporated into Florida Rule of Civil Procedure 1.210(b), which provides as follows:
Rule 1.210 Parties
* * * * * *
(b) Infants or Incompetent Persons. When an infant or incompetent person has a representative, such as a guardian or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented *784 in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.[6]
See also Art. III, § 11(a)(17), Fla. Const.; §§ 743.01-.07, Fla. Stat. (1991) (recognizing the disability of nonage of minors).
The necessity of a guardian ad litem or next friend, the alter ego of a guardian ad litem, to represent a minor is required by the orderly administration of justice and the procedural protection of a minor's welfare and interest by the court and, in this regard, the fact that a minor is represented by counsel, in and of itself, is not sufficient. Brown v. Ripley, 119 So.2d 712 (Fla. 1st DCA 1960). See also Roberts v. Ohio Casualty Insurance Co., 256 F.2d 35, 39 (5th Cir.1958); Zaro v. Strauss, 167 F.2d 218 (5th Cir.1948). Unless a child has a guardian or other like fiduciary, a child must sue by his next friend; however, the next friend does not become a party to the suit. Brown v. Caldwell, 389 So.2d 287, 288 (Fla. 1st DCA 1980). Where the next friend brings the suit, the minor is the real party in interest. Youngblood v. Taylor, 89 So.2d 503, 506 (Fla. 1956).
This disability of nonage has been described as procedural, rather than jurisdictional, in character because if a minor mistakenly brings an action in his own name such defect can be cured by the subsequent appointment of a next friend or guardian ad litem. Smith v. Langford, 255 So.2d 294, 297 (Fla. 1st DCA 1971). See also Brown v. Ripley, 119 So.2d 712, 714-15 (Fla. 1st DCA 1960). Thus, the concept of capacity determines the procedure which a minor must invoke in order to pursue a cause of action.
Section 39.461(1), Florida Statutes (Supp. 1992), provides that petitions for termination of parental rights may be initiated either
by an attorney for [HRS], or by any other person who has knowledge of the facts alleged or is informed of them and believes that they are true.
This court has construed the term "any other person who has knowledge" to mean
someone who is in a peculiar position so that such knowledge can be reasonably inferred; for example, the judge familiar with the file, the guardian or attorney for the children, neighbors or friends of the parties who, because of their proximity, would be expected to have such knowledge.
In re C.B., 561 So.2d 663, 666 (Fla. 5th DCA 1990) (holding that guardian who was paternal grandmother of one of the children was proper party to bring petition on behalf of both children).[7] This construction contemplates the situation which arose here  that Jerri Blair, an attorney, would file a termination petition on Gregory's behalf. She must do so, however, as his next friend. The next friend may be an attorney, but need not be one. Under this long-recognized and well-tested procedure, the child is the real party in interest, but the courts require that an adult person of reasonable judgment and integrity conduct the litigation for the minor as the latter's next friend.[8]Garner v. I.E. Schilling Co., 128 Fla. 353, 174 So. 837 (Fla. 1937).[9] This procedural burden on the conduct of litigation on behalf of a child is only marginally greater than the burden on an adult and is necessary for the orderly conduct of judicial proceedings.
As a general rule, states "may require a minor to wait until the age of majority before being permitted to exercise legal rights independently." Bellotti v. Baird, 443 U.S. 622, *785 650, 99 S.Ct. 3035, 3051-52, 61 L.Ed.2d 797 (1979). Objective criteria, such as age limits, although inevitably arbitrary, are not unconstitutional unless they unduly burden the minor's pursuit of a fundamental right. Bellotti, 443 U.S. at 640, 643 n. 23, 99 S.Ct. at 3046, 3048 n. 23. Gregory's lack of capacity due to nonage is a procedural, not substantive, impediment which minimally restricts his right to participate as a party in proceedings brought to terminate the parental rights of his natural parents; therefore, we conclude that this procedural requirement does not unduly burden a child's fundamental liberty interest to be "free of physical and emotional violence at the hands of his ... most trusted caretaker."[10]
Although we conclude that the trial court erred in allowing Gregory to file the petition in his own name because Gregory lacked the requisite legal capacity, this error was rendered harmless by the fact that separate petitions for termination of parental rights were filed on behalf of Gregory by the foster father, the guardian ad litem, HRS, and the foster mother.

2. BURDEN OF PROOF
Gregory and his foster father contend that the applicable burden of proof should be preponderance of the evidence and not clear and convincing evidence, asserting that the fundamental liberty interest of a child to be raised in an atmosphere free of abuse or neglect is at least equal to a parent's interest in maintaining a relationship with a child.[11] They further contend that the clear and convincing evidence standard should apply only when the state is seeking to terminate parental rights and not when the action is brought on behalf of the child. We reject this contention because the clear and convincing evidence standard for terminating parental rights is the correct standard under both Florida law and federal constitutional law.
Both Florida case law and statutory law have mandated that in termination of parental rights cases the applicable burden of proof is clear and convincing evidence. Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565 (Fla. 1991); Torres v. Van Eepoel, 98 So.2d 735 (Fla. 1957); § 39.467(1), Fla. Stat. (Supp. 1992). This court previously has recognized that section 39.461(1) expressly authorizes persons other than the state to initiate termination proceedings. See In re C.B., 561 So.2d 663, 666 (Fla. 5th DCA 1990). Nevertheless, section 39.467(1), Florida Statutes (Supp. 1992), provides unequivocally and without limitation that
The need for termination of parental rights shall be established by clear and convincing evidence.
Further, although in Padgett the petition was filed by the state, in Torres the state was not involved in the termination proceeding. In Torres the mother could not care for the children following the death of their father; consequently, custody of the children was given to the father's sister and her husband. In ruling on the custodians' subsequent petition for adoption of the children based upon the mother's neglect and other matters, the court held that
in order to deprive a parent permanently of the custody of [her] offspring the evidence relied upon should be clear and convincing.
Torres, 98 So.2d at 737. Thus, Florida law requires application of the clear and convincing standard regardless of who initiates the proceeding.
Additionally, we note that adoption of the preponderance of the evidence standard might conflict with the constitutional standard of clear and convincing evidence established in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In *786 Santosky, the Court held that a New York statute which prescribed a "fair preponderance of the evidence" standard in proceedings to terminate parental rights denied the parents' rights to procedural due process. Although Santosky dealt with the state's initiation of termination proceedings, the Court's analysis applies to the present case:
An elevated standard of proof in a parental rights termination proceeding would alleviate "the possible risk that a factfinder might decide to [deprive] an individual based solely on a few isolated instances of unusual conduct [or] ... idiosyncratic behavior." Addington v. Texas, [441 U.S. 418, 427, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)]. "Increasing the burden of proof is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate" terminations will be ordered. Ibid.

The Appellate Division approved New York's preponderance standard on the ground that it properly "balanced rights possessed by the child ... with those of the natural parents... ." [In re John AA, 75 A.D.2d 910, 427 N.Y.S.2d 319, 320 (N.Y. App. Div. 1980)]. By so saying, the court suggested that a preponderance standard properly allocates the risk of error between the parents and the child. That view is fundamentally mistaken.
The court's theory assumes that termination of the natural parents' rights invariably will benefit the child. Yet we have noted above that the parents and the child share an interest in avoiding erroneous termination. Even accepting the court's assumption, we cannot agree with its conclusion that a preponderance standard fairly distributes the risk of error between parent and child. Use of that standard reflects the judgment that society is nearly neutral between erroneous termination of parental rights and erroneous failure to terminate those rights. Cf. In re Winship, [397 U.S. 358, 371, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)] (Harlan, J., concurring). For the child, the likely consequence of an erroneous failure to terminate is preservation of an uneasy status quo. For the natural parents, however, the consequence of an erroneous termination is the unnecessary destruction of their natural family. A standard that allocates the risk of error nearly equally between those two outcomes does not reflect properly their relative severity.
Santosky, 455 U.S. at 764-66, 102 S.Ct. at 1400-01 (footnotes omitted).

3. CLEAR AND CONVINCING EVIDENCE OF NEGLECT AND ABANDONMENT
The trial court found clear and convincing evidence of abandonment and neglect. In State v. Mischler, 488 So.2d 523 (Fla. 1986), the Florida Supreme Court approved the following definition of "clear and convincing evidence":
Clear and convincing evidence requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief [or] conviction, without hesitancy, as to the truth of the allegation[s] sought to be established.
Mischler, 488 So.2d at 525 (quoting Slomowitz v. Walker, 429 So.2d 797, 800 (Fla. 4th DCA 1983)). See also In re Guardianship of Browning, 543 So.2d 258, 273 (Fla. 2d DCA 1989), approved, 568 So.2d 4 (Fla. 1990); Smith v. Department of Health & Rehabilitative Services, 522 So.2d 956, 958 (Fla. 1st DCA 1988).
Although the clear and convincing evidence standard is a higher standard of proof than that of the preponderance of the evidence, the principles applicable to appellate review of a trial court's findings remain the same. See Florida Bar v. Hooper, 509 So.2d 289, 290-91 (Fla. 1987). In this regard, "[f]indings of fact by a trial court are presumed correct and are entitled to the same weight as a jury verdict," Marsh v. Marsh, 419 So.2d 629, 630 (Fla. 1982), and the record must be reviewed in the light most favorable to the prevailing party below. Carolina *787 Lumber Co. v. Daniel, 97 So.2d 156, 158 (Fla. 1st DCA 1957). Further, this court will defer to the trial court's evaluation of the credibility of the witnesses and the weight to be given their testimony. Marsh, 419 So.2d at 630. If, upon the pleadings and evidence before the trial court, there is any theory or principle of law which would support the trial court's judgment in favor of terminating Rachel's parental rights, this court is required to affirm the judgment. Cohen v. Mohawk, Inc., 137 So.2d 222, 225 (Fla. 1962). Accordingly, because the standard of proof below was clear and convincing evidence, this court may not overturn the trial court's findings unless it may be said as a matter of law that no one could reasonably find such evidence to be clear and convincing. In re D.J.S., 563 So.2d 655, 662 (Fla. 1st DCA 1990). See also Florida Bar v. Hooper, 509 So.2d 289, 290 (Fla. 1987).
Section 39.01(1), Florida Statutes (Supp. 1992), defines abandonment as:
a situation in which the parent ... of a child . .., while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. If the efforts of such parent ... are, in the opinion of the court, only marginal efforts that do not evidence a settled purpose to assume all parental duties, the court may declare the child to be abandoned... .
In In re K.A.F., 442 So.2d 365, 366 (Fla. 5th DCA 1983), this court upheld a finding of abandonment where, after placing the child in foster care, the mother "broke numerous appointments with [HRS], evinced `no concern for the child' and never requested to visit her." In In re C.M.H., 413 So.2d 418, 428 (Fla. 1st DCA 1982), the court upheld a finding of abandonment where, during the six-month period prior to the filing of the petition, the mother appeared "satisfied to permit the State of Florida to take care of her child" and failed "to make even marginal effort to evince a settled purpose to have the child rejoin her." See also In re J.F., 384 So.2d 713, 715 (Fla. 3d DCA 1980) (mother never supported child "or demonstrated any degree of parental fitness, stability or emotional maturity so as to develop any type of relationship with her child").
Applying these principles, we are unable to conclude that the trial court's finding of abandonment is clearly erroneous or lacking in evidentiary support.[12]

4. SIMULTANEOUSLY TRYING TERMINATION AND ADOPTION PROCEEDINGS
Rachel contends that the trial court erred in trying the termination and adoption proceedings simultaneously, arguing that in doing so the trial court violated her rights to procedural due process in that the focus of the proceedings impermissibly shifted from the issues of abandonment and neglect to a comparison of Rachel's parenting skills with those of the protential adoptive parents. More specifically, Rachel argues that this procedure resulted in unduly placing upon her the burden to overcome this comparison, which resulted in an interference with her fundamental liberty interest in Gregory's care, custody, and maintenance as recognized in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565 (Fla. 1991).
We agree with Rachel that trying these two cases simultaneously constituted error and that the better practice would have been to try these cases separately. Rule 8.275(a) of the Florida Rules of Juvenile Procedure provides:
Rule 8.275 Supersedeas on Appeal
(a) Termination of Parental Rights. The taking of an appeal shall operate as a supersedeas in cases involving a petition for termination of parental rights, but the child shall continue in the custody of the agency under the order until the appeal is decided.
Similarly, section 39.473(3), Florida Statutes (Supp. 1992), provides
that a termination of parental rights order with placement of the child with a licensed *788 child-placing agency or [HRS] for subsequent adoption shall be suspended while the appeal is pending, but the child shall continue in custody under the order until the appeal is decided.
Clearly, section 39.473(3) and rule 8.275(a) contemplate trying these two matters separately because an appeal of a trial court's judgment entered in a termination proceeding automatically suspends and supersedes the pending adoption proceedings. Trying these two matters separately avoids an impermissible comparison between the natural parent's parenting skills and those of the prospective parents, a comparison which could impact greatly the outcome of any termination proceeding where the focus must remain on issues such as abandonment, neglect, or abuse. The fact that a child may be better off materially or otherwise with the prospective adoptive parents should never become the focal point in a termination proceeding. Such a comparison impermissibly places upon parents who are defending termination proceedings the burden of proving that they are "better" parents than the prospective parents. See Padgett, 577 So.2d at 572 (Barkett, J., concurring) (quoting In re C.N.G., 531 So.2d 345, 347 (Fla. 5th DCA 1988) (Cowart, J., dissenting)). This procedure constitutes an undue burden on a parent's fundamental liberty interest in the care and custody of the parent's child. In this regard, we emphasize that neither Florida nor federal law permits third persons to gain or retain custody of a child whose natural parents have not been found unfit simply because these third persons may be better able to provide materially or otherwise for the child's needs.
In the instant case, however, this error is harmless for two reasons. First, a great deal of the testimony concerning the relationship between Gregory and his foster parents was admissible in the termination proceeding pursuant to the provisions of section 39.467(2), Florida Statutes (Supp. 1992).[13] Although some comparisons were made between the parenting skills of the Russes and Rachel which went beyond the elements of section 39.467(2),[14] the evidence did not emphasize these comparisons. Further, Rachel has not shown that these comparisons became a focal point of the termination proceedings or affected the trial court's decision regarding the determination of the issues of *789 abandonment and neglect. Thus, we hold that trying these two proceedings simultaneously was error, but that such error was harmless in the context of these proceedings.

5. JURISDICTION OF THE TRIAL COURT TO ENTER JUDGMENT OF ADOPTION
Rachel filed a notice of appeal in open court immediately following the trial court's oral pronouncement terminating her parental rights. The trial court, however, proceeded orally to grant the petition for adoption filed by the foster parents. Subsequently, the trial court entered, and then filed with the clerk, judgments in both the termination and adoption proceedings. These judgments were rendered for appellate purposes when signed and filed. See Fla.R.App.P. 9.020(g), 9.110(b).
The filing of Rachel's notice of appeal was premature; however, the appeal subsequently matured when the trial court entered and filed its final judgment in the termination proceeding. Middlebrooks v. St. Johns River Water Management District, 529 So.2d 1167, 1169 (Fla. 5th DCA 1988). See also Norm Burg Construction Corp. v. Jupiter Inlet Corp., 514 So.2d 1102 (Fla. 1987); Williams v. State, 324 So.2d 74 (Fla. 1975). Consequently, at that point, Rachel was effectively appealing the termination order which the trial court must have logically and legally rendered before it granted the adoption.
Once Rachel's notice of appeal became effective for appellate purposes, her appeal then implicated the provisions of both rule 8.275(a) and section 39.473(3),[15] which respectively provide that the adoption proceedings are superseded and suspended. At that point, the trial court was without subject matter jurisdiction to proceed and clearly erred in granting the foster parents' petition for adoption.[16]
In In re J.R.G., 624 So.2d 273 (Fla. 2d DCA 1993), the second district rejected the argument that this serious procedural error is rendered harmless by the district court's subsequent affirmance of the order terminating parental rights. We agree with the second district's admonition in In re J.R.G. and adopt it as our own:
... We are concerned ... that an order of adoption entered prior to an order terminating parental rights could create confusion in the future.
Moreover, we are very disturbed by the failure of the trial court to obey section 39.473(3), Florida Statutes (1991). That statute specifies that an appeal of an order terminating parental rights suspends any provision in the order placing the child with HRS for adoption. This court is required to expedite appeals concerning orders terminating parental rights, in part, to authorize adoptions as soon as possible. § 39.473(1), Fla. Stat. (1991).
When an adoption follows a termination proceeding, an order of adoption should not be entered until a written order terminating parental rights has been filed and until it is clear that such order will not be affected by rehearing or appeal. In this case, the petition for adoption has never given the circuit court a legal basis to grant an adoption. That court will not have authority to permit an adoption until this court issues its mandate in the appeal of the order terminating parental rights.
In this case, we hope that the circuit court's serious procedural error will have no great impact upon the children and the several affected adults. If we had been required to reverse the order terminating *790 parental rights, however, the error could have caused serious consequences for these people. We urge all parties involved in adoption proceedings to comply carefully with these important timing requirements.
In re J.R.G., 624 So.2d at 275 (emphasis in original). Accordingly, we reverse the final judgment granting the adoption and remand that matter to the trial court for further proceedings.
In summary, we hold that: (1) Gregory lacked the capacity to initiate a proceeding for termination of parental rights; however, the trial court's ruling permitting Gregory to file the petition in his own name constituted harmless error in light of the fact that four other petitions were filed on Gregory's behalf; (2) the applicable burden of proof in all termination of parental rights proceedings is clear and convincing evidence; (3) the record supports the trial court's findings of clear and convincing evidence of abandonment; (4) the trial court erred when it tried the termination and adoption proceedings simultaneously, but such error was harmless; and (5) the trial court committed reversible error when it entered the adoption order.[17]
AFFIRMED in part; REVERSED in part; REMANDED for further proceedings.
GRIFFIN, J., concurs.
HARRIS, C.J., concurs in part and dissents in part with opinion.
HARRIS, Chief Judge, concurring in part, dissenting in part:
This rather ordinary termination of parental rights case was transformed into a cause celebre by artful representation and the glare of klieg lights. It is the judge's obligation, however, to look beyond the images created by light and shadow and concentrate on the real-life drama being played out on center stage. Florida recognizes no cause of action that permits a child to divorce his parents.
I concur with the majority holding that so long as the parents do nothing to forfeit their fundamental liberty interest in the care, custody and management of their child, no one (including the child) can interfere with that interest.[1] While the child has the right not to be abused, neglected or abandoned, there is no right to change parents simply because the child finds substitutes that he or she likes better or who can provide a better standard of living.[2]
Florida does not recognize "no-fault" termination of parental rights. That is why the focus in a termination case is (and must be), at least in the first analysis, on the alleged misconduct of the biological parent or parents which would authorize termination of parental rights. Termination of parental rights requires a two step analysis. First, did the parents do something that the State has determined to be sufficiently egregious to permit forfeiture of their right to continue as parents (abuse, neglect, abandonment, voluntary consent to adoption)? Unless the answer to this first question is affirmative, the second step in the analysis (the best interest of the child) is unnecessary.[3] Because of the *791 trial strategy employed by the attorneys for the child in this case, the trial court failed to keep these steps separated.
One artful maneuver which attracted the attention of the media[4] (and distracted the court) was the filing of this cause as a declaratory action (along with a standard petition under section 39.461) in the name of the child (as opposed to next friend, etc.) and joining the proposed adoptive parents as parties in interest in the action for declaratory relief.[5] This action for declaratory relief was transferred to the juvenile division and tried with the termination action. Because the court permitted the pleadings to stand, and be tried with the termination proceedings, the focus was shifted to a comparison of this troubled biological mother (a single parent) with the prospective adoptive parents (a lawyer and his wife) to determine which could provide the child a better life. The mother could not win this contest. The alleged misconduct of the biological mother ceased to be an issue independent of (except as a condition precedent to) any consideration of the best interest of the child; instead it became an issue inextricably intertwined with the best interest of the child  and even this issue was improperly influenced by the presence and active participation of the proposed adoptive parents as parties  and with the proposed adoptive father acting as one of the child's attorneys.
I concur with the majority that there is sufficient evidence in the record to support the court's finding of abandonment. But I also urge that there is sufficient evidence in the record (and precedent)[6] to support the court had it found no abandonment. That is why I am unable to agree that the numerous errors in this case, and the cumulative effect of them, can be disregarded as merely harmless error.
The most egregious error was to try the adoption case along with the termination case. The mother's attorneys tried valiantly to prevent this.[7] We all agree that the trial court erred in denying the mother's efforts to limit this action to the termination issues. But the majority finds even this error harmless because much of the adoption testimony properly could have been introduced under section 39.467(2)  the factors used to establish the "manifest best interest of the child." This conclusion, however, ignores the fact that the "best interest" factors themselves should not have been considered by the court until after the court first determined that there was abandonment.
Clearly the adoption testimony was presented along with the testimony relating to the termination proceedings when the only relevant issue was whether the mother's conduct justified termination. Was the mother prejudiced by the manner in which this trial *792 was conducted? It is possible that the court might have given more consideration to the mother's belated showing of interest in her son, her strong desire to accept her parenting obligations as evidenced by her willingness to expose all her blemishes to full media scrutiny, her apparent successful substantial completion of her HRS performance agreement and the recommendation by the Missouri[8] counterpart of our HRS to return the child to his mother, if it had not been subjected to the confusion and pressures caused by the procedural irregularities of this case. It is not clear what the court would have done if the case had been presented in the proper manner. Because the procedural errors may well have affected the outcome of this case, I submit that the mother is entitled to a new hearing on the issue of abandonment under proper pleadings and confronted only by the proper parties.
The mother might lose again. But even if she did, she (and all those who have closely followed this case) would at least know that she lost on a level playing field.
NOTES
[1] Because all interested parties have voluntarily appeared in the public arena and made their names known, and because the trial court proceedings were televised, the names of the parties have become part of the public domain and are used in this opinion.
[2] Gregory's foster father, George Russ, later became an additional attorney of record for Gregory. Because the order appointing an attorney ad litem is not challenged on appeal, we do not decide the issue of the propriety of such appointment in a termination of parental rights proceeding.
[3] Gregory's natural father died during the pendency of this appeal.
[4] Inexplicably, Jerri A. Blair, Gregory's attorney and attorney ad litem, did not file a petition on behalf of Gregory.
[5] See § 39.473(3), Fla. Stat. (Supp. 1992); Fla. R.Juv.P. 8.275(a).
[6] See rule 8.200 of the Florida Rules of Juvenile Procedure (1992).
[7] Compare In re T.W., 551 So.2d 1186 (Fla. 1989), wherein the parental consent statute, section 390.001(4)(a), Florida Statutes (Supp. 1988), and the related rule, Florida Rule of Civil Procedure 1.612, specifically authorized a pregnant unmarried minor to petition the circuit court for relief.
[8] Not raised in this case is the question of whether the next friend has any function in the proceedings after the petition has been filed and an appropriate guardian ad litem has been appointed by the court. See § 39.465(2)(a), Fla. Stat. (1991).
[9] In this regard, we note that section 39.461(2), Florida Statutes (Supp. 1992), requires that the petition for termination of parental rights be signed by the petitioner under oath stating his good faith in filing the petition.
[10] Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565, 570 (Fla. 1991) (our supreme court recognizing the fundamental liberty interest of a child to be free from physical and emotional violence). See also Santosky v. Kramer, 455 U.S. 745, 754 n. 7, 102 S.Ct. 1388, 1395 n. 7, 71 L.Ed.2d 599 (1982) (recognizing "liberty interests of the child").
[11] Although not argued on appeal, we question whether a motion for summary judgment is the proper procedural vehicle by which to raise an issue regarding the applicable burden of proof; however, we do not address this procedural issue because we have concluded that the applicable burden of proof is clear and convincing evidence.
[12] Because we have affirmed the trial court's finding of abandonment, it is unnecessary for us to address the issue of whether the evidence supports the trial court's finding of neglect.
[13] Section 39.467(2), which requires the trial court in termination proceedings to consider specific factors in determining the manifest best interests of the child, provides in pertinent part:

39.467 Adjudicatory hearing. 
* * * * * *
(2) For the purpose of determining the manifest best interests of the child, the court shall consider and evaluate all relevant factors, including, but not limited to:
* * * * * *
(f) The child's ability to form a significant relationship with a parental substitute and the likelihood that the child will enter into a more stable and permanent family relationship as a result of permanent termination of parental rights and duties.
(g) The length of time that the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
(h) The depth of the relationship existing between the child and the present custodian.
(i) The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
* * * * * *
§ 39.467(2), Fla. Stat. (Supp. 1992). We emphasize, however, that under section 39.467 (formerly section 39.41(f)), a trial court is authorized to terminate a natural parent's rights only if the trial court finds by clear and convincing evidence that termination is in the manifest best interests of the parent's child and that the parent has abandoned, abused, or neglected the child. In re D.J.S., 563 So.2d 655, 669 (Fla. 1st DCA 1990); In re Baby Boy A, 544 So.2d 1136, 1137 (Fla. 4th DCA 1989). Thus, a finding that termination is in the manifest best interests of the child is by itself legally insufficient to support a judgment terminating parental rights. Williams v. Department of Health & Rehabilitative Services, 589 So.2d 359 (Fla. 5th DCA 1991); In re R.N.G., 507 So.2d 136, 137 (Fla. 1st DCA 1987). The trier of fact must take great care to assure that such evidence does not influence his decision on the threshold issue of abuse, abandonment, or neglect. In the present case, the trial court found by clear and convincing evidence that Rachel had abandoned Gregory and that termination was in the manifest best interests of Gregory.
[14] Rachel challenges neither the facial constitutionality of section 39.467(2) nor the constitutionality of section 39.467(2) as applied to this case.
[15] Rule 8.275(a) and section 39.473(3) are set forth in issue 4 of this opinion, which is entitled SIMULTANEOUSLY TRYING TERMINATION AND ADOPTION PROCEEDINGS.
[16] Opinion testimony or argument which concludes that to grant the adoption would be in the best interest of Gregory cannot confer jurisdiction upon the trial court. We also seriously doubt that staying the adoption proceedings would have been detrimental to Gregory, who would continue to live with his foster parents while the appeal proceeded in an orderly fashion. Also, if there was any clear and compelling reason to proceed with the adoption proceedings pending appeal of the termination order, a request could have been made to this court to relinquish jurisdiction for that purpose based upon such a showing.
[17] We have considered all of the contentions raised in this appeal, and those not specifically discussed in this opinion have been found to be without merit.
[1] Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944), holds:

[T]he custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.
Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982) describes the rights of the natural parent as a fundamental liberty interest in the care, custody and management of their child.
[2] Because I was impressed with the general high quality of the amicus brief filed by Children First, I was surprised to read the following comment:

The decision not to use drugs, not to bear a child or to go to work is no less momentous for a child than the decision as to whom he wants to raise him.
Is Children First suggesting that an eleven year old has the same right (not to mention the requisite maturity and insight) to change parents as he does to apply to become a newspaper boy?
[3] In Interest of T.D., 537 So.2d 173, 176 (Fla. 1st DCA 1989):

Testimony concerning the bonding of T.D. with the foster parents was relevant only to a determination of the child's best interest and in this case was improperly emphasized in the adjudication of the mother's abuse, abandonment or neglect of the child.
[4] Another artful maneuver was to have the child file the petition to have the proposed adoptive parents adopt him. Perhaps unheard of in the history of adoption jurisprudence but good box office nevertheless. Since we are reversing the adoption order, no further discussion of the adoption proceedings is necessary.
[5] As the court explained in Santosky, 455 U.S. at 759, 102 S.Ct. at 1398:

The factfinding [in a termination proceeding] does not purport  and is not intended  to balance the child's interest in a normal family home against the parents' interest in raising the child. Nor does it purport to determine whether the natural parents or the foster parents would provide the better home.
[6] In In Interest of M.R.L., 608 So.2d 548 (Fla. 4th DCA 1992) the court denied termination based on abandonment when a mother left her child with friends for several months and her whereabouts were unknown. The mother testified that she had attempted to communicate with the child (the evidence shows several attempts by the mother in the case at bar) and that she provided some minimal support for the child.
[7] In their motion to disqualify the judge, the mother's attorneys urged:

Since Judge Kirk has made no distinction between the proceedings, by his acceptance of the standing of the child on the same basis in both the juvenile proceedings and in the court of general jurisdiction, [the mother] has reason to fear that her rights will be lost in a judicial shuffle between her [rights] and his best interest.
[The mother] asks the [judge] to recuse himself from either or both proceedings, the latter if he believed what he has heard to date would prevent him from hearing either matter impartially. If he chooses to hear either, the appearance of justice requires recusal from the other.
[8] The mother lived in Missouri and was under the supervision of its "HRS" during much of the time that the child was in foster care. It was shortly after Missouri had recommended returning the child to his mother that this action was commenced.