NORTHCUTT, Judge.
F.C., Sr., challenges the final judgment terminating his parental rights to his four children. We reverse because the evidence was not sufficient to support termination.
The Department of Children and Families removed F.C.’s children from his home because the children’s mother had abused one of her other children, a half-sibling of the children in this case.[1] No one ever claimed that F.C. abused any of the children living in the home. His children were declared dependent. Over the next few years, F.C. entered into various performance agreements or case plans that required him to complete certain tasks. He finished marriage counseling, but eventually he and the children’s mother separated and she moved out of state. F.C. also completed a Positive Parenting class, participated in four separate psychological evaluations, obtained stable housing, and was receiving income from worker’s compensation.
The department filed a petition to terminate F.C.’s parental rights in April 1998, then filed an amended and substituted petition in October 1999. As the statutory grounds for termination, the petition cited sections 39.806(l)(a), (b), (c), (e), (f) and (i), Florida Statutes (1999), but only one subsection applied to F.C., section 39.806(l)(e).[2] That subsection provides:
(e) A petition for termination of parental rights may also be filed when a child has been adjudicated dependent, a case plan has been filed with court, and the child continues to be abused, neglected, or abandoned by the parents. In this case, the failure of the parents to sub *161 stantially comply for a period of 12 months after an adjudication of the child as a dependent child or the child’s placement. into shelter care, whichever came first, constitutes evidence of continuing abuse, neglect, or abandonment....
The final judgment, apparently relying on this subsection, determined that F.C.’s parental rights should be terminated because he had abandoned the children. Abandonment of a child is statutorily defined as:
a situation in which the parent or legal custodian of the child ... while being able, makes no effort to communicate with the child, which situation is sufficient to evidence a willful rejection of parental obligations. If the efforts of such parent ... to support and communicate with the child are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.
§ 39.01(1), Fla. Stat. (1999).
We first note that the evidence in this p case did not prove that F .C. had failed to substantially comply with a case plan. See § 39.806(l)(e). Indeed, the trial court specifically found the children’s mother had failed to substantially comply, but made no such finding concerning the father.
The issue then becomes whether the department proved by clear and convincing evidence that F.C. abandoned the children, as that term is defined in section 39.01(1). See In re S.S., 723 So.2d 344, 347 (Fla. 2d DCA 1998) (holding grounds for termination must be proved by clear and convincing evidence). The trial court based its finding of abandonment on the fact that F.C. had failed to maintain contact with the children between September 1995 and November 1999. In fact, the evidence showed that F.C. visited the children eleven times between October 1995 and July 1996. His visits then became sporadic; he saw the children once in 1997, twice in 1998 and four times between February and November 1999. By the time of the hearing on termination, the D.C.F. counselor was beginning to schedule regular visitation sessions.
Although F.C. did not give a complete explanation for his lack of visitation during 1997 and 1998, he did testify that he visited the children every time his D.C.F. counselor provided him with a bus pass to ride from his home in Plant City to see them in Tampa. Ms. Browne, his counsel- or at the time of the final hearing, acknowledged that she may have prevented both parents from visiting during the latter part of 1998. In February 1999, however, the trial court ordered her to begin scheduling visitation. F.C. visited the children in February, April, June and November. During 1999, the father broke a bone in his knee and had surgery twice, in April and in October. F.C. told Browne he had missed some visitation days because of the problems with his knee.
While F.C.’s infrequent visitation in 1997 and 1998 could imply a rejection of his parental obligations, his resumption of visitation in 1999 casts doubt on that implication. Cf. Carlson v. State, Dep’t of Health and Rehabilitative Services, 378 So.2d 868 (Fla. 2d DCA 1979) (reversing for new hearing when evidence to support termination reflected conditions in mother’s earlier marriage, not the present situation in her new marriage). Moreover, he showed a settled purpose to assume his parental duties by complying with most of the tasks assigned in his case plan. In 1997, he completed a Positive Parenting class for parents of children with developmental problems. In 1999, he was evaluated by a psychologist for the fourth time. He obtained stable housing. Ms. Browne testified that F.C. called her frequently to discuss what he needed to do to be reunited with his children, and he always responded when Browne wrote or called him. Compare T.S. v. State, Dep’t of Health and Rehabilitative Services, 464 So.2d 677 (Fla. 5th DCA 1985) (noting, when rejecting the circuit court’s finding of abandon *162 ment, that the mother had always wanted her child, had tried to comply with all the Department’s requirements, and had fought the termination proceedings at every stage), with In the Interest of K.A.F., 442 So.2d 365 (Fla. 5th DCA 1988) (in upholding abandonment, court noted that mother hadn’t seen child at all for 18 months, had broken numerous appointments with the Department, had evinced no concern for the child and had never requested visitation). As a matter of law, the facts in this case do not rise to the level of clear and convincing evidence of abandonment. See In the Interest of A.L.W., 590 So.2d 984 (Fla. 1st DCA 1991) (holding that circuit court determination that clear and convincing evidence supported its findings may be overturned as a matter of law if no one could reasonably find the evidence to be clear and convincing).
The trial court also found that F.C. appeared to lack the ability to properly care for and ensure the safety of his children. This may be true, but F.C. has never been given the chance to try. The psychologist who evaluated him believed that, with an increase in the children’s time at his home, unsupervised visits and participation in the Family Builders parent training course, F.C. could succeed as a parent, at least with his daughters. On remand, the department should attempt to implement the psychologist’s suggestions, where appropriate.
Finally we note that the trial court reviewed section 39.810, Florida Statutes (1999), which lists factors used to determine whether termination of parental rights is in a child’s manifest best interest. The court discussed some, but not all, of these statutory factors and found that they supported termination. But a court may terminate parental rights only if it finds that termination is in the child’s manifest best interest and that the parent has abandoned, abused or neglected the child. See Kingsley v. Kingsley, 623 So.2d 780, 788 n. 13 (Fla. 5th DCA 1993). By itself, a finding that the termination is in the child s manifest best interest is not sufficient to support a judgment terminating a parent’s rights. See id.
We reverse the judgment terminating F.C.’s parental rights to his four children. We remand for further proceedings.
PATTERSON, C.J., and DAVIS, J., Concur.

. The mother’s parental rights were also terminated, but she has not challenged the judgment.

. The petition also stated that termination was warranted under section 39.806(l)(b), Florida Statutes (1999), because F.C. had abandoned the children. But that section requires that the "identity of the parent or parents is unknown and cannot be ascertained by diligent search...." It is clearly inapplicable to the facts here.