# Third District Court of Appeal
## State of Florida

Opinion filed June 1, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D21-1513, 3D21-1514
Lower Tribunal Nos. 19-15345, 19-5017

_____

**Manuel Fernandez,**
Appellant,

vs.

**Yordalys Cruz,**
Appellee.

Appeals from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

Law Offices of Alfaro & Fernandez, P.A., and Elbert Alfaro, for appellant.

Barrios-Balbin, P.A., and Louis M. Barrios-Balbin, for appellee.

Before FERNANDEZ, C.J., and MILLER, and BOKOR, JJ.

MILLER, J.

Appellant, Daymara Fernandez, a child, by and through her father, Manuel Fernandez, appeals two adverse final summary judgments rendered in favor of appellee, her mother, Yordalys Cruz. On appeal, the child challenges the determination that she was collaterally estopped and precluded by the doctrine of res judicata from pursuing her constructive trust claims because of a prior quiet title lawsuit to which she was not a party. Because the child was a non-party and did not otherwise have her interests represented in the previous litigation, we conclude that neither doctrine debars her claims.

## BACKGROUND

While suffering from significant health issues, the father transferred two properties, including a six-unit apartment complex, to the mother. Nearly a decade later, he filed a quiet title action, alleging the mother had procured the properties by forgery. The case was actively litigated for over four years, and a jury ultimately found no forgery occurred.

Following the jury verdict, the child, acting through her next friend, the father, filed a separate lawsuit against the mother, seeking to quiet title to the same properties. Various iterations of the complaint ensued, and the child eventually alleged a single count for imposition of a constructive trust on the theory that the father signed documents transferring the properties to

2

the mother in reliance upon an express promise to convey the property to the child upon reaching adulthood.

After the child filed suit, the mother initiated an action for ejectment, eviction, civil theft, and tortious interference against the father and all others in possession. At that time, the child was purportedly residing with her father. In her complaint, the mother alleged that, notwithstanding the jury verdict in the prior litigation, the father continued to occupy a unit within the apartment complex and collect rents from tenants residing in adjacent units. The child, again acting through her father, filed a counterclaim alleging the same theory of constructive trust she had asserted earlier.

The mother moved for summary judgment, contending that both newly drafted claims were barred by the doctrines of res judicata and collateral estoppel.[1] In support of her motion, she adduced affidavits from tenants, along with the verdict form from the previous suit. The child opposed the motion, arguing that because she was not a party to the prior suit and her theory of relief had not yet been litigated, she was entitled to advance her

---

[1] Although a constructive trust is more accurately described as an equitable remedy than a traditional cause of action, here, the complaint further alleged the elements of unjust enrichment. See Swope Rodante, P.A. v. Harmon, 85 So. 3d 508, 511 (Fla. 2d DCA 2012).

claims. The trial court granted summary judgment in favor of the mother on both the claim and counterclaim, and the instant appeals ensued.

## STANDARD OF REVIEW

We review a trial court order granting summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). The de novo standard of review further applies to a trial court's ruling that relief is barred on the grounds of res judicata or collateral estoppel. United Auto. Ins. Co. v. L. Offs. of Michael I. Libman, 46 So. 3d 1101, 1103 (Fla. 3d DCA 2010).

## ANALYSIS

The courts have developed the companion common law doctrines of res judicata and collateral estoppel for the three-fold purpose of "reliev[ing] parties of the cost and vexation of multiple lawsuits, conserv[ing] judicial resources, and, by preventing inconsistent decisions, encourag[ing] reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980). Although Florida courts have, on occasion, consolidated the elements comprising each, the doctrines are distinguishable. A party seeking to invoke res judicata, otherwise known as claim preclusion, must establish four identities: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons

4

for or against whom the claim is made." Topps v. State, 865 So. 2d 1253, 1255 (Fla. 2004). Similarly, collateral estoppel, often referred to as issue preclusion or estoppel by judgment, consists of the following five elements:

> (1) the identical issue was presented in a prior proceeding; (2) the issue was a critical and necessary part of the prior determination; (3) there was a full and fair opportunity to litigate the issue; (4) the parties to the prior action were identical to the parties of the current proceeding; and (5) the issue was actually litigated.

Marquardt v. State, 156 So. 3d 464, 481 (Fla. 2015).

Historically, the scope of both doctrines was strictly limited by the doctrine of mutuality of the parties. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). Neither party could use a prior judgment as an estoppel against the opposing party unless both were bound by the initial decision. Id. at 326–27. Consequently, irrespective of the polices underlying the application of res judicata and collateral estoppel, unyielding adherence to the mutuality doctrine allowed a party who had litigated and lost to potentially relitigate identical issues against new parties. Id. at 327.

In the latter half of the twentieth century, however, "[t]wo influential decisions first enabled *defendants* to run issue preclusion against repeat-plaintiffs who had previously had a full and fair opportunity to litigate an issue, albeit against a different defendant." 6 William B. Rubenstein, Newberg on Class Actions § 18:10 (5th ed. 2021). In Bernhard v. Bank of American

5

National Trust & Savings Ass'n, 122 P.2d 892, 895 (Cal. 1942), the Supreme Court of California reasoned, "No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." Consistent with this decision, in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 347 (1971), the United States Supreme Court held that a defendant accused of infringing a patent could plead non-mutual defensive preclusion where the patent had already been declared invalid in a separate case that afforded the patent holder a "full and fair opportunity to litigate his claim."

Eight years after endorsing the use of non-mutual defensive issue preclusion, the Supreme Court authorized non-mutual offensive issue preclusion under limited circumstances. In Parklane Hosiery Co. v. Shore, the court determined that, given the arguments behind judicial economy and fairness, the best approach "is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." 439 U.S. at 331. Thus, "[t]he general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where

6

. . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." Id.

Against this landscape, Florida courts "have not strictly adhered to the identity of parties requirement in all cases when invoking the doctrines of res judicata or collateral estoppel." West v. Kawasaki Motors Mfg. Corp., U.S.A., 595 So. 2d 92, 94 (Fla. 3d DCA 1992). Rather, they have dispensed with strict mutuality requirements "where special fairness or policy considerations appear to compel it." Blumberg v. USAA Cas. Ins. Co., 790 So. 2d 1061, 1067 (Fla. 2001) (quoting West, 595 So. 2d at 94).

In this vein, the term "'parties' has been broadly interpreted to include more than just record parties—so that, for example, a person in privity with a record party, as well as a person who controls for his own interest a record party, may invoke the doctrine of res judicata or collateral estoppel." West, 595 So. 2d at 94. Privity, in turn, has been defined as "mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." Se. Fid. Ins. Co. v. Rice, 515 So. 2d 240, 242 (Fla. 4th DCA 1987) (quoting Black's Law Dictionary 1079 (5th ed. 1979)). Synthesizing these definitions, "[f]or one to be in privity with one who is a party to a lawsuit . . ., one must have an interest in the action such that she will be bound by the final judgment as

7

if she were a party." Stogniew v. McQueen, 656 So. 2d 917, 920 (Fla. 1995). In other words, one party may be said to be a privy of another where the right to recover is dependent upon the right of recovery of the plaintiff in the prior action. Osburn v. Stickel, 187 So. 2d 89, 91–92 (Fla. 3d DCA 1966).

Notions of privity, however, do not extend to bar a party from appearing in two lawsuits in different capacities. This concept was first explored by the Florida Supreme Court over six decades ago. In Youngblood v. Taylor, 89 So. 2d 503 (Fla. 1956), the court considered whether a party appearing in an original action in one capacity, individual or representative, but in a later action in another capacity, was bound by or entitled to the benefits of res judicata or collateral estoppel. There, following an accident, the father, acting as the next friend of his child, filed a negligence suit. Youngblood, 89 So. 2d at 504. After the jury returned an adverse verdict, the father filed his own action seeking different damages. Id. The trial court granted summary judgment, finding the second suit was precluded on the grounds of res judicata and estoppel by judgment. Id.

In considering the lower court order, the supreme court first observed that the core factual circumstances supporting both claims appeared the same in that "not only was there a single mishap but a lone person was injured; . . . therefore, one element of res judicata is present; and . . . by the

8

same token an element of estoppel by judgment is present because the 'precise facts' seem to have been adjudicated." Id. at 505. The court then scrutinized the identity prerequisite inherent in any res judicata or collateral estoppel application. The court observed that the child could only bring suit through a guardian or next friend. Id. Concomitantly, the father could only recover his own damages by way of an individual suit. Consequently, "the father's right of action was independent of the minor's and if the minor were to 'waive his right to sue, such waiver [would] not bar the father's right.'" Id. at 506 (alteration in original) (quoting Wilkie v. Roberts, 109 So. 225, 227 (Fla. 1926)); see also Fla. R. Civ. P. 1.210(b). Observing these adages, the court concluded "if, as here, the next friend in one suit happens to be the father who brings the other suit, the parties cannot be said to be identical because in one the real party in interest is the minor; in the other the adult." Youngblood, 89 So. 2d at 506. Thus, the Youngblood court declined to apply either claim or issue preclusion to bar the father's claim.

Section 36 of the Restatement (Second) of Judgments (2022) mirrors this reasoning, providing: "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in

9

another capacity."[2]  This rule is not uniquely relegated to res judicata. Instead, with respect to collateral estoppel or issue preclusion, "a party appearing in successive actions in the same capacity is subject to the rules stated in §§ 27–28 but is not precluded where the capacities in which he participated are different."  Restatement (Second) of Judgments § 36 cmt. a. These provisions are consistent with numerous reported Florida decisions in this arena.  See United Auto. Ins. Co. v. Millennium Radiology, LLC, 47 Fla. L. Weekly D175 (Fla. 3d DCA Jan. 12, 2022); Hill v. Colonial Enters., Inc., 219 So. 2d 51, 53 (Fla. 4th DCA 1969); Smith v. United Servs. Auto. Ass'n, 259 So. 2d 501, 502 (Fla. 1st DCA 1972).

The logic underlying Youngblood and its progeny applies with equal force to the instant case.  Here, the father filed the prior fraud claim in his individual capacity but initiated the later constructive trust claims in his representative capacity as the "next friend" of the child.  In a suit by a "next

---

[2] This concept is illustrated in the following example:

> In a collision between cars driven by A and B, A is injured, B is killed, and C, who is B's wife, is also injured.  A brings an action for his injuries against C as administratrix of B's estate. Judgment is for A.  If C subsequently sues for her own injuries, she is not precluded from relitigating the issues determined in the first action.

Restatement (Second) of Judgments § 36 cmt. b, illus. 3.

friend," the real party plaintiff is the child, not the next friend. See Kingsley v. Kingsley, 623 So. 2d 780, 784 (Fla. 5th DCA 1993). The contrasting role of the father in the separate suits and the independence of the respective damages militate against the application of either res judicata or collateral estoppel.

Further, regardless of mutuality, for collateral estoppel to apply, "[i]t is essential that the question common to both causes of action was [a]ctually adjudicated in the prior litigation." Seaboard Coast Line R.R. Co. v. Indus. Contracting Co., 260 So. 2d 860, 864 (Fla. 4th DCA 1972); see Restatement (Second) of Judgments § 27 cmt. d ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this [doctrine]."). Similarly, for res judicata to apply, identity of the cause of action is required. See Topps, 865 So. 2d at 1255. Here, although the mother contends that the original and current suits stem from a common nucleus of adjudicated operative facts, our review suggests otherwise. The summary judgment record establishes that, in the first suit, the father sought to void the deeds transferring the properties as the product of forgery. In line with that theory, the testimony concerned whether the signatures were

11

fraudulently affixed to the relevant documents, and the jury was solely asked by way of the verdict form to determine whether the mother forged the deeds.

The record is devoid of any indication that the factual underpinnings of the constructive trust claim were presented by way of pleading or litigated, let alone adjudicated, in the original action.  See State St. Bank & Tr. Co. v. Badra, 765 So. 2d 251, 253 (Fla. 4th DCA 2000) ("Res judicata extends only to the facts and conditions as they existed at the time the judgment was rendered, at the time the issues in the first action were made, and to the legal rights and relations of the parties as fixed by the facts determined by that judgment.").  Given these factors, it cannot be said that the child had a full and fair opportunity to litigate her claims.

Accordingly, we conclude summary judgment was entered in error, and we reverse and remand for further proceedings.

Reversed and remanded.